CLINCHFIELD COAL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102862. Promulgated June 23, 1942.

*A. K. Morison, Esq.,* for the petitioner.
*William V. Crosswhite, Esq.,* and *George H. Mitchell, Esq.,* for the respondent.

154

OPINION.

BLACK: As has already been stated, part of the deficiencies in petitioner's unjust enrichment tax for the years 1936 and 1937 were determined under the provisions of section 501 (a) (2) and part were determined under section 501 (a) (3), Revenue Act of 1936.

That part of the deficiencies determined under section 501 (a) (2) has been conceded by petitioner and is no longer in issue. All of the deficiency determined by the Commissioner under section 501 (a) (3) is in controversy.

Section 501 (a) (3) is printed in the margin.[1]

The statute in question provides that the Commissioner in his determination of the deficiency may determine to what extent, if any, the vendor shifted the burden of the tax to the vendee, by the use of margin computations. Section 501 (e) provides for the use of this method and is printed in the margin.[2]

The Commissioner in his determination of the deficiencies in the instant case has used the margin method. His computation of the margins is set out in full detail in the deficiency notice and is a part of the record in this proceeding, and has been carefully examined and studied, but is not incorporated herein on account of its length. The petitioner attacks the correctness of this margin computation on the ground that in its compilation the Commissioner used only

---

[1] SEC. 501. TAX ON NET INCOME FROM CERTAIN SOURCES.

(a) The following taxes shall be levied, collected, and paid for each taxable year (in addition to any other tax on net income), upon the net income of every person which arises from the sources specified below:

\* \* \* \* \* \*

(3) A tax equal to 80 percentum of the net income from refunds or credits to such person from the United States of Federal excise taxes erroneously or illegally collected with respect to any articles, to the extent that such net income does not exceed the amount of the burden of such Federal excise taxes with respect to such articles which such person shifted to others.

[2] (e) For the purposes of subsection (a) (1), (2), and (3), the extent to which the taxpayer shifted to others the burden of a Federal excise tax shall be presumed to be an amount computed as follows:

(1) From the selling price of the articles there shall be deducted the sum of (A) the cost of such articles plus (B) the average margin with respect to the quantity involved; or

\* \* \* \* \* \* \*

two factors, namely, royalties and depletion, as factors of cost of petitioner's product. It is petitioner's contention that these two factors which respondent has used in his compilation are only a small part of petitioner's cost; that there are other factors of cost quite as important, such for example as selling costs, and that the Commissioner has not taken these other factors into consideration in his computation of the margins for the base period and for the tax period. Petitioner contends that if he had done so quite a different result would have been reached.

Petitioner embodies its views as to a correct computation of the margins in its Exhibit 3, which was introduced in evidence. This computation has likewise been carefully examined and studied, but is not incorporated in our findings on account of its length.

Petitioner devotes considerable space in its brief to an argument that the Commissioner has erred in his computation of the margins and, therefore, there is no statutory presumption in his favor. For reasons which we shall presently state, we think it would be unprofitable for us to discuss the computation of the margins which the Commissioner has made or the computation which petitioner has made in its Exhibit 3.

For the purposes of this case we shall assume that respondent's computation of the margins, which are contained in his deficiency notice, were made in accordance with the statute and Treasury regulations and that the presumption provided by section 501 (e) exists in his favor. This presumption, however, is a rebuttable one.

Section 501 (i) provides:

(i) Either the taxpayer or the Commissioner may rebut the presumption established by subsection (e) by proof of the actual extent to which the taxpayer shifted to others the burden of the Federal excise tax. Such proof may include, but shall not be limited to:

[Here the statute sets out in detail certain methods of proof which may be used in rebuttal of the presumption which arises under subsection (e).]

We think the petitioner has succeeded in rebutting the statutory presumption raised in the Commissioner's favor by subsection (e). In the first place, petitioner has proved clearly that it did not add the amount of the tax to its invoices of coal sold. The only exceptions to this were a few invoices for coal sold to agencies of the Federal Government. These agencies refused to pay the tax and it was never collected from them by petitioner.

Petitioner's comptroller testified:

Shortly after the first of November, 1935, I called our president's attention to the fact that this Act was effective and that up to that point we had not added the tax to any invoices and asked him if he had given consideration to the application of the tax. He replied that he had and that it ought to be added but the chaotic condition of the market was such that we would not do it. For

that reason it was never added to any other invoices other than the ones I have pointed out.

In answer to the foregoing testimony, respondent contends that the fact that petitioner did not add the amount of the tax paid directly to each invoice of coal shipped would by no means be conclusive that petitioner did not shift the burden of the tax to its vendees. That, of course, is true.

The tax could be passed on to petitioner's vendees by an increase in the price of coal which would equal or exceed the tax, just as effectively as by adding the tax to the invoice. The evidence in the instant case shows that in October 1935, after the Guffey Act had been enacted by Congress but prior to November 1, 1935, when the tax became effective, petitioner increased the price of its coal 16 cents per ton, later adjusted to 15 cents per ton. The evidence conclusively shows that this increase in price was made by petitioner because of increased labor costs which were occasioned by wage increases that were put into effect a short time prior thereto. This increase in price of 15 cents per ton did not stay in effect very long.

On November 25, 1935, petitioner reduced its prices on all contract coal 20 cents per ton. Also, shortly after that it made similar reductions in price on its spot sales of domestic sizes of coal. This decrease in price of 20 cents a ton for coal remained in effect until June 1, 1936, which was after the Guffey Act had been declared unconstitutional. The only exceptions to this were some fluctuations upward of spot sales of domestic sizes of coal which were influenced by seasonal demand. Therefore, it seems clear that petitioner did not shift the burden of the tax to its customers by increasing the price of its coal to them. Aside from adding the tax directly to the invoice or collecting it by an increase in the price of coal, there would doubtless be still another method by which petitioner could have passed on the tax to its customers, assuming that certain factors were in existence. For example, if after November 25, 1935, when petitioner put into effect a general decrease of 20 cents per ton in the price of its coal, there had been a substantial decline in petitioner's operating expenses and selling expenses which was not passed on to its customers, that would doubtless be a factor which would tend to sustain the presumptive correctness of the margin computation which the Commissioner has made.

The evidence shows that no such lowering of operating expenses and selling expenses took place, but that on the contrary during the remainder of the period when the tax was in effect petitioner's operating deficit per ton of coal was greater than it was prior to November 25, 1935. Therefore, we think that, taking the evidence as a whole, it

shows that petitioner did not shift, either directly or indirectly, any part of the Guffey coal tax to its customers.

We think that the facts of the instant case bring it within the ambit of our decision in *Norwood-White Coal Co.*, 45 B. T. A. 638. See also *Epstein v. Helvering*, 120 Fed. (2d) 427 (Fourth Circuit), in which the court reversed a decision of the Processing Tax Board of Review and in its opinion, among other things, said:

> We do not think that this decision should be sustained in view of the Board's findings. It gave too great weight to the marginal method required by section 907 (a), (b) and (c), and too little weight to proof of the actual facts permitted by section 907 (e) of the Act. Having found that the comparison of margins resulted unfavorably to the taxpayer, the Board accepted the statutory prima facie presumption, and held that the greater part of the burden of the tax was shifted, notwithstanding the express finding that no part of the tax was added to the sales price of the goods or collected from the customers. Moreover, this weight was given to the marginal method in the face of the further finding that during the post-tax period, a substantial change prevailed in the taxpayer's business in that the selling price of the cigars was reduced while the grade of tobacco used was maintained at the previous level, so that the margin between the cost of the raw material and the selling price of the manufactured goods was necessarily diminished.

On the strength of the foregoing authorities we sustain the petitioner on the only issue involved in this proceeding.

*Decision will be entered under Rule 50.*