WILSON ATHLETIC GOODS MFG. CO., INC. (FORMERLY WILSON SPORTING GOODS CO.) (FORMERLY GENERAL SPORTS INC.), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 123. Promulgated June 9, 1943.

*Paul Ware, Esq.*, for the petitioner.
*W. D. Crosswhite, Esq.*, for the respondent.

#### OPINION.

MURDOCK. *Judge:* The Commissioner notified the petitioner that it was liable as a transferee for unjust enrichment tax of the General Sports Mfg. Co. for the fiscal year ended October 31, 1936. The deficiency is in the amount of $1,116.98 and was imposed under section 501 (a) (2) of the Revenue Act of 1936. The Commissioner has

moved to dismiss the petition, as amended, on the ground that it does not state a cause of action, i. e., the petitioner would not be entitled to a favorable judgment even, though all of the allegations of the amended petition were proven. The parties were heard on the motion.

The pleadings are designed, as the petitioner intended, to raise but one issue, to wit, whether the determination of the Commissioner was erroneous in that he arbitrarily determined the tax liability under a presumption provided in section 501 (e), contrary to the request of the petitioner and the mandate contained in section 501 (f) (1) requiring him to resort to data of representative concerns engaged in a similar business and similarly circumstanced. Section 501 (f) (1) is as follows:

The term "margin" means the difference between the selling price of articles and the cost thereof, and the term "average margin" means the average difference between the selling price and the cost of similar articles sold by the taxpayer during his six taxable years, preceding the initial imposition of the Federal excise tax in question, except that if during any part of such six-year period the taxpayer was not in business, or if his records for any part of such period are so inadequate as not to furnish satisfactory data, the average margin of the taxpayer for such part of such-period shall, when necessary for a fair comparison, be deemed to be the average margin, as determined by the Commissioner, of representative concerns engaged in a similar business and similarly circumstanced.

There are allegations that the petitioner did not come into existence and did not engage in business until December 30, 1930; the initial imposition of the Federal excise tax here in question occurred on August 1, 1933; the records of the petitioner for the period from December 30, 1930, to August 1, 1933, "were so inadequate as not to furnish satisfactory data for making the marginal computations referred to in section 501 * * *"; the petitioner filed a return on Form 945 with the collector for the first district of Illinois, showing no tax due, stating the impossibility of furnishing any data on the average margin due to inadequate and incomplete records, and requesting the Commissioner to determine and use the average margin of representative concerns; and the Commissioner did not resort to the average margin of representative concerns, but presumed that the entire burden of the refunded processing tax of $1,686.01 had been shifted to others. It is also alleged that the petitioner has no way of knowing "the average margin as determined by the Commissioner of Internal Revenue of representative concerns engaged in a similar business and similarly circumstanced" and it did not elect to have any determination made by presumptions under section 501 (e). The prayer is that the Court hear the proceeding and determine "that there is no unjust enrichment deficiency due from the petitioner."

The allegations of fact are open to criticism in that therein no mention is made of the taxpayer, General Sports Mfg. Co., but all references are to the petitioner, as if it were the taxpayer and not merely a transferee. It is rather apparent from the argument that the allegations were intended to relate to the taxpayer, and we shall ignore this fault in the pleadings for the purpose of discussion and for the benefit of the petitioner.

We thus assume for the purpose of the motion that the taxpayer was in business for only two years and seven months of the six-year period preceding the imposition of the processing tax; its records for that base period were so inadequate as not to furnish satisfactory data for making the marginal computations of section 501; and yet the Commissioner, upon request, has refused to use the average margin of representative concerns.

The Commissioner's contention is that the facts pleaded do not show any error in his determination or justify this Court in disturbing that determination. He says the petitioner misinterprets the statute and the failure of the taxpayer to give the data required on the return, particularly that relating to the taxable period to which the processing tax applied, completely relieved the Commissioner from the then vacuous task of referring to representative concerns and fully justified the Commissioner in determining the deficiency on such other information as he had. The Commissioner correctly points out that the scheme of the statute in subsection (e), as supplemented by (f) (1), was to use the records of a taxpayer reflecting its actual experience both for the tax period and for the base period, but to allow a substitute for the latter under certain circumstances. It does not contemplate any substitute for the records of the taxpayer for the tax period. This latter circumstance is probably the stumbling block of the petitioner in this case.

The petitioner bases its case on the matters pleaded and is content to stand on its pleadings. It argues that the section 501 is mandatory and allows the Commissioner no alternative but to determine and use, under (e), the average margin of representative concerns described in (f) (1) whenever circumstances are as alleged in the amended petition.

We shall pass the question ignored by the petitioner of whether or not resort to representative concerns would here be "necessary for a fair comparison" under (f) (1). However, it must be remembered that the presumptions resulting from the use of margins in (e) are rebuttable by proof and also that the Commissioner undoubtedly has authority under the statute to determine a deficiency even though the presumptions of (e) are against him. Thus, it would be strange if he had no authority to determine the deficiency in this case, where

the taxpayer failed to supply the tax period information, indispensable in the computations of (e).

That subsection provides that the extent to which the taxpayer shifted to others the burden of a Federal excise tax shall be presumed to be [1] either, (1) the excess of the selling price of the articles over the sum of the cost of the articles and the average margin with respect to the quantity involved, or, (2), if the taxpayer elects by filing his return on that basis, the excess of the margin per unit over the average margin multiplied by the number of units. Obviously, neither of the above computations can be made without information as to the "margin" or the difference between the selling price and the cost of the articles on which the processing tax was imposed, all of which relate to the processing tax period rather than to the pre-tax or base period. The pleadings contain no reference to cost, selling price, or margin. The Commissioner explained in the notice of transferee liability that the information required for the computations of 501 (e) had not been submitted in the schedules on the return, Form 945, and, since the evidence to show that the General Sports Mfg. Co. had borne the burden of the tax was lacking, he had included in income the reimbursement of $1,686.01. The petitioner was on notice about the absence of data not only for the base but also for the tax period. It chose not to supply any of it.

The petitioner is thus contending that the Commissioner could not legally determine the deficiency without first determining the "average margin" of this taxpayer by using the average margin of others in a similar business and using that average margin in determining the presumption as to shift under section 501 (e), even though the taxpayer has never given the Commissioner the information as to "cost," "selling price," or "margin" for the tax period, essential to the computations of (e) and called for on the schedules of the return, and does not now allege any facts relating to those items. The petitioner has failed to explain how the Commissioner could complete the computations without the data as to the tax period.

The statute does not require and this Court has no authority to require the Commissioner, under the circumstances of this case, to determine the "average margin" by resort to representative concerns as a prerequisite to the determination of a deficiency. If the taxpayer has failed to supply essential information called for on the return, the Commissioner does not act arbitrarily in making assumptions unfavorable to the taxpayer and his determination is presumed to be correct. *Arden-Rayshine Co.*, 43 B. T. A. 314; *Sophie Jaski*, 43 B. T. A. 321; *Binghamton Candy Co.*, 43 B. T. A. 327; *E. W. Stockton*, 44 B. T. A. 514. The statute required the filing of a return

---

[1] Subject to other conditions not here material.

which "shall contain such information * * * as the Commissioner, with the approval of the Secretary, shall prescribe." Sec. 503 (b). He prescribed Form 945, which required information as to the processing tax period. but the General Sports Mfg. Co. supplied none of the data needed for (e) (1) or (2). Even though the petitioner could have alleged facts to supply the missing information (cf. *Arden-Rayshine Co.*, *supra; Sophie Jaski. supra*), it has deliberately refrained. The Commissioner was not required by the statute to obtain, by his own investigation, all of the data needed for the computations under (e), but had a right to assume for the purpose of his determination that the taxpayer had not borne the burden of the processing tax. Cf. *Lee Wilson & Co.* v. *Commissioner*, 123 Fed. (2d) 232; *Arden Rayshine Co.*, *supra; Angelus Milling Co.*, 1 T. C. 1031. The fault here lies with the taxpayer and it can not shift this burden to the Commissioner by failing to supply data from its own business which it should have disclosed on a proper return. The Commissioner. lacking essential data for the computations under (e), is not required to make either a fruitless or an impossible calculation.

Notable also is the absence of any allegation that resort to the average margin of representative concerns would result in a money benefit to this petitioner. The petitioner merely complains that the Commissioner did not use the representative concern method of determining the presumption as to shift of burden and asks that he be required to use it. Far from alleging what the average margin would be or how it would affect the case, the petitioner disclaims all knowledge of that factor and of ways and means of proving it. It argues that the necessary data is peculiarly within the knowledge of the Commissioner and must be produced by him, citing cases under the special assessment provisions, sections 327 and 328 of the Revenue Act of 1918. The cases do not touch the question of what must be pleaded. Furthermore. the analogy between the two acts is not complete. Section 501 contemplates proof by a taxpayer seeking relief from a determination of the Commissioner and, of course, pleadings must precede proof. The Court is authorized to hear proof of facts alleged to show that less tax is due than the amount determined by the Commissioner, but not to discipline the Commissioner for using one method instead of another in making his determination.

The facts alleged are insufficient to show that the determination of the Commissioner was arbitrary, cf. *Helvering* v. *Taylor*, 293 U. S. 507, or to entitle the petitioner to any relief if proven. The petition does not set forth a cause of action and, accordingly, it is dismissed on the motion of the respondent.

*Decision will be entered for the respondent.*