INSULAR SUGAR REFINING CORPORATION, PETITIONER, *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT.

Docket No. 108871.   Promulgated May 31, 1944.

*J. S. Halstead, Esq.*, for the petitioner.
*Thomas R. Charshee, Esq.*, and *R. E. Maiden, Jr., Esq.*, for the
respondent.

924

## OPINION.

HILL, *Judge*: The ultimate question in this proceeding is whether petitioner is subject to an unjust enrichment tax by reason of its receipt from a vendor of cotton bags of reimbursement representing processing tax burden which had been included in the price of the bags.

Section 501 (a) (2) of the Revenue Act of 1936 provides for a tax equal to 80 percent of the net income from reimbursement received by a vendee from his vendor of amounts representing Federal excise tax burden included in prices paid by the vendee to his vendor, but only to the extent that the vendee shifted the burden of excise tax to others. Section 501 (b) exempts from the tax such reimbursement if the vendee would have been entitled to a refund of the Federal excise tax from

the United States under the terms of any statute and otherwise than as an erroneous or illegal collection.

Petitioner received reimbursements from its vendor, Diamond, of $5,158.22 and $1,200.46 during its years ended November 30, 1935 and 1936, respectively, representing cotton processing tax burdens included in the price of bags purchased. Respondent treated the full amounts as net income subject to unjust enrichment tax under section 501 (a) (2) and determined the deficiencies accordingly. In so doing respondent necessarily presumed that petitioner had shifted the entire burden of the tax to purchasers of the sugar which it sold in the cotton bags bought of Diamond. Petitioner contends that none of the burden of the tax was shifted to the buyers of its sugar and that, in any event, the exemption referred to above as allowed by section 501 (b) is applicable here. Since petitioner failed to supply the marginal information necessary to compute the presumptive extent of the shift as provided in section 501 (e) of the Revenue Act of 1936, respondent was justified in assuming that it had shifted it all, and his determination is presumed to be correct. *Wilson Athletic Goods Mfg. Co.*, 2 T. C. 70; *Arden-Rayshine Co.*, 43 B. T. A. 314. Upon petitioner rests the burden of proving that the processing tax burden was not in fact shifted to its vendees. *Binghampton Candy Co.*, 43 B. T. A. 327; cf. *Helvering* v. *Insular Sugar Refining Corporation*, 141 Fed. (2d) 713. Petitioner likewise is charged with proving the availability of the exemption. We shall first take up the exemption question.

The cotton bags which petitioner purchased of Diamond were exported from the United States to the Philippine Islands under bills of lading in which Diamond appeared as consignor. The price which petitioner paid for these bags included the cotton processing tax burden which Diamond shifted at the time of the sales. If, under these facts, petitioner was entitled to a refund from the United States by reason of the exportation of the bags, then petitioner's contention that section 501 (b) prevents the imposition of the tax in question must be sustained. That this is in accordance with respondent's understanding of the force of section 501 (b) is evidenced by Regulations 95, art. 12, wherein it is stated:

In computing net income under section * * * 501 (a) (2) * * * there shall be excluded the net income with respect to any article * * * if the taxpayer would have been entitled under any statute to a refund from the United States of the Federal excise tax imposed with respect to the article otherwise than as an erroneous or illegal collection. (For example, a refund with respect to an article exported * * * under section 17 * * * of the Agricultural Adjustment Act.) * * *

To support its contention that it was entitled to a refund from the United States, petitioner relies upon the statute referred to in the

above quotation, as reenacted by section 601 of the Revenue Act of 1936 for the limited purpose of allowing refunds thereunder where the exportation took place prior to January 6, 1936. The statute is, in part, as follows:

A. A. A., Sec. 17 (a). Upon the exportation * * * to the Philippine Islands * * * of any product processed wholly or partly from a commodity with respect to which product or commodity a tax has been paid * * * under this title, the tax * * * due and paid shall be * * * refunded. Under regulations prescribed by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, the * * * tax refunded shall be allowed to the consignor named in the bill of lading under which the product is exported or to the shipper or to the person liable for the tax provided the consignor waives any claim thereto in favor of such shipper or person liable for the tax. * * *

It is to be observed that the statute states in most specific and unequivocal terms that the refund upon exportation of the taxed article is to be allowed (1) to the consignor, or, (2) if the consignor waives his claim in favor of the shipper, to the shipper, or, (3) if the consignor waives his claim in favor of the person liable for the tax, to such person. The statute is unambiguous and, hence, there is no occasion to resort to legislative history as an aid to its construction. *Citizens Water Co.* v. *Commissioner*, 87 Fed. (2d) 874. The statute itself constitutes the sole evidence of legislative intent. *Central Real Estate Co.* v. *Commissioner*, 47 Fed. (2d) 1036. Since the persons to whom refunds are allowable are specified, it follows that refunds are not allowable to others.

It is clear that petitioner was not one who could claim a refund under section 17 (a) of the Agricultural Act, as it contends. Petitioner was not the consignor under the shipping papers, but was the consignee. Petitioner urges that it was the shipper on the ground that the bags had been appropriated to it prior to their exportation. Assuming, arguendo, that it was the shipper, there is no showing that Diamond waived its claim for refund in petitioner's favor. In fact, the evidence to the contrary is conclusive, for Diamond itself claimed and obtained the refund from the United States. Thus, petitioner was not entitled to a refund under the terms of the statute which it relies upon, and we hold, as a consequence, that the exemption provided for in section 501 (b) is not available to it. The argument that this conclusion results in inequitable and technical distinctions should be addressed to Congress. Courts have no power to ignore legislative language and legislative intent so clearly expressed. *Commissioner* v. *Beck's Estate*, 129 Fed. (2d) 243. The case of *Cudahy Bros. Co.* v. *La Budde*, 92 Fed. (2d) 937; certiorari denied, 303 U. S. 659, relied upon by petitioner, is not in point. The plaintiff there was the consignor of the exported articles.

This brings us to petitioner's second point, i. e., that the burden of the cotton processing tax was not shifted to the purchasers of the sugar. This is a question of fact, *Arden-Rayshine Co., supra*, and, as explained above, it is here one concerning which petitioner has the burden of proof.

Petitioner sought to prove its point largely by the deposition of H. T. Netherton, the manager of the refined sugar department of petitioner's Pacific Coast agent, Balfour, Guthrie & Co., Ltd. Netherton had been most familiar with petitioner's affairs since 1930, particularly as they bore upon price and sales policies, with which he had much to do. His testimony has been considered over the repeated objections of respondent and we think it establishes, first, that the cotton processing tax was not separately billed to the buyers of petitioner's sugar, and, secondly, that petitioner did not intend to shift such tax burden. We have so found in our facts. However, these circumstances fall short of sustaining the contention made. That the tax was not billed as a separate item is of no legal significance. *Wilson Milling Co.* v. *Commissioner*, 138 Fed. (2d) 249, affirming 1 T. C. 389; certiorari denied, 320 U. S. 800. *Sportswear Hosiery Mills* v. *Commissioner*, 129 Fed. (2d) 376. Nor is it compelling that the petitioner did not intend to pass the tax on. *United States* v. *Poindexter & Sons Merchandise Co.*, 128 Fed. (2d) 992. The decisive question is whether or not the burden of the tax was in fact shifted, even though indirectly, so that petitioner was "unjustly enriched" when reimbursement was received. *Jergens Co.* v. *Commissioner*, 125 Fed. (2d) 686.

Here the evidence shows that on the date upon which the cotton processing tax went into effect, August 1, 1933, petitioner raised the price of its sugar by 10 cents per 100 pounds. This was sufficient to pass on the burden of the tax and more, for the tax on each container holding 100 pounds of sugar did not exceed 2.2 cents. Price changes in petitioner's sugar were made in keeping with similar changes made by petitioner's two principal domestic competitors. Therefore, it is fair to assume that the August 1, 1933, increase was put into effect because the competitors had decided to follow this course. The record does not disclose why these competitors raised their prices coincident with the levying of the cotton processing tax. It may well have been that they did so in order to shift the tax burden while taking advantage of a more favorable market. If so, then petitioner, too, must be said to have done the same. *Honorbilt Products, Inc.* v. *Commissioner*, 119 Fed. (2d) 797; *Arden-Rayshine Co., supra*. Moreover, this record supplies no evidence as to relative margins of profit before and after the incidence of the tax. Cf. *Helvering* v. *Insular Sugar Refining Corporation, supra*. We can not go outside of the record to procure such information. Nor do we know whether the prices petitioner

obtained for its sugar during the period in question was below cost, including the cost of the bags in which the sugar was sold—which cost embraced the cotton processing tax. In holding that a taxpayer must go at least this far to sustain his burden of proving sugar processing taxes were absorbed and shifted, the Court of Claims said in *Insular Sugar Refining Corporation* v. *United States*, 49 Fed. Supp. 319, a case involving the present petitioner:

\* \* \* here it is expressly shown that plaintiff did increase its price by the amount of the tax and got the increased price a part of the time, at least. It may or may not have continued to get the amount of the tax, depending upon whether or not the June 7, 1934 market value sufficiently exceeded the cost of its sugar plus operating and selling expenses. Whether or not this is so, we do not know.

We conclude that petitioner in the present proceeding has failed to establish that it had not been relieved of the cotton processing tax burden. Accordingly, petitioner having received reimbursements from its vendor, respondent's determination made under section 501 (a) (2) of the Revenue Act of 1936 is approved.

The second issue is whether petitioner is liable for an additional tax equal to 25 percent of the tax for failure to file tax returns within the time prescribed by law. The unjust enrichment tax returns covering the years ended November 30, 1935 and 1936, were filed on November 1, 1940, over five months beyond the due date for filing. Section 503 of the Revenue Act of 1936 makes all provisions of law pertaining to taxes imposed by Title I, including penalties, applicable with respect to the unjust enrichment tax, with exceptions not here material. Section 291, included in Title I, prescribes a 25 percent penalty in circumstances such as exist here unless the failure to file a timely return is due to reasonable cause and not to willful neglect. No evidence was adduced to explain the delay in filing the instant returns. If there were mitigating circumstances for it, they were within petitioner's knowledge and it was incumbent upon it to present them for our consideration. Having failed to do so, and having admitted facts requiring the assessment of the additional tax unless the conditions in avoidance exist, we must allow respondent's claim for an increased deficiency. While this issue was raised by amended answer, with the burden of proof thereof consequently on respondent, this burden was met when the fact of filing returns beyond the time lawfully set was established. The burden did not go so far as to require the negation of facts which would avoid the penalty.

We approve the original deficiencies, plus $1,031.65 for the year ended November 30, 1935, and $198.83 for the year ended November 30, 1936.

*Decision will be entered for respondent.*