J. I. Beale, Jr. v. Commissioner. R. I. Beale v. Commissioner. Estate of James Chesley Beale, Mrs. Alice Lewis Beale, Administratrix v. Commissioner. Cyrus W. Beale v. Commissioner.
Beale v. Commissioner
Docket Nos. 103811, 103812, 103813, 103814.
United States Tax Court
1946 Tax Ct. Memo LEXIS 223; 5 T.C.M. (CCH) 274; T.C.M. (RIA) 46087; April 9, 1946
Wilton H. Wallace, Esq., and E. F. Colladay, Esq., for petitioners. Royal E. Maiden, Jr., Esq., and Lloyd C. Hooks, Esq., for respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: These consolidated proceedings involve unjust enrichment tax deficiencies and penalties for the calendar years 1935 and 1936 as follows: 1935
1936
Docket No.
Petitioner
Deficiency
Penalty
Deficiency
Penalty
103811
J. I. Beale, Jr.
$ 9,703.13
$2,425.78
$ 871.56
$130.73
103812
R. I. Beale
14,631.52
3,657.88
1,293.14
193.97
103813
Estate of James Chesley Beale, Mrs.
Alice Lewis Beale, Administratrix
16,901.41
4,225.35
457.57
68.64
103814
Cyrus W. Beale
3,438.47
859.62
263.30
39.50
*224 The respondent determined that these petitioners received unjust enrichment income for the year 1935 amounting to $74,275.74 and for the year 1936 in the amount of $6,266.02, being the net income from the sale of peanuts with respect to which the processing tax was imposed but not paid during the period May 1, 1935 through January 6, 1936. There are several assignments of error but the principle issue is whether or not these petitioners shifted the processing tax on peanuts sold by them during this period. Petitioners also challenge respondent's action in determining penalties because the unjust enrichment tax returns were filed late. For convenience Franklin Peanut Company will hereinafter be referred to as Franklin. The unjust enrichment tax returns were filed with the collector of internal revenue at Richmond, Virginia. Findings of Fact During the taxable years involved in these proceedings, J. I. Beale, Jr., R. I. Beale, James Chesley Beale and C. W. Beale owned and operated The Franklin Peanut Company of Franklin, Virginia, as partners. For many years Franklin has been engaged in the purchasing, processing and selling of peanuts in various grades. These peanuts were sold *225 in the hull and in the shelled form. Franklin purchased most of its raw materials, hereinafter referred to as farmers stock, from farmers in the Eastern part of North Carolina and Virginia. Occasionally it made purchases from brokers and other peanut processors. Prices paid by Franklin for the farmers stock fluctuated frequently as did the selling prices of cleaned and shelled peanuts. All these products were bought and sold in a highly competitive market. Franklin maintained warehouses for the storage of its farmers stock and its processed goods. When the farmers stock or finished products were put in storage they became so commingled that it was impossible to identify any particular lot or to determine the order in which they were received in the warehouse. Pursuant to the Agricultural Adjustment Act, a processing tax was imposed upon the first domestic processors of peanuts during the period October 1, 1934 to and including January 6, 1936. On the latter date the tax was invalidated and declared unconstitutional by the United States Supreme Court. Franklin, as a first domestic processor of peanuts, became liable for and paid such processing tax for the period November 1, 1934 to *226 and including April 30, 1935. Franklin incurred no tax liability during the month of October, 1934 inasmuch as it had no inventory of farmers stock on hand as of October 1, and did no processing during that month. The rate of the tax, based on farmers stock, was one cent a pound; converted into cleaned and shelled peanuts the rate was 1.05 cents and 1.5 cents a pound, respectively. Sometime prior to May 1, 1935, petitioners concluded that the processing tax was unconstitutional and determined not to pay it, pending final decision of the United States Supreme Court on the constitutionality of the tax. To meet the competition of competitors (there were approximately 18 peanut processors in the area) who were offering tax refunds in the event the tax was declared unconstitutional Franklin began to lower its prices. At no time did Franklin make any refund arrangement with its buyers. The tax was never segregated or billed as a separate item and for a time Franklin's invoices carried a notation that the processing tax was included in the price. The tax was treated on Franklin's books the same as any other costs of doing business. In determining its selling price after May 1, 1935, Franklin *227 took into consideration all such cost and, in an effort to meet competition caused by the refund contracts of its competitors, undersold its competitors by amounts varying from one-quarter to one-half cent a pound. During the period January 1, 1935 to April 30, 1935, the average margin per pound of Franklin's sales was.018895 and during the period May 1, 1935 to December 31, 1935, the average margin on these sales was.0136. During the year 1935 Franklin's cost of doing business per pound was.00442. During the period May 1, 1935 to January 6, 1935, Franklin paid no processing tax but filed monthly returns with the collector. Pursuant to an injunction obtained by it on June 1, 1935 the tax shown to be due on these returns was paid into the Federal District Court. On January 6, 1936, when the tax was invalidated by the United States Supreme Court, the funds so impounded reverted to Franklin. The due date for filing unjust enrichment tax returns for 1935 was December 15, 1936; the due date to file such returns for 1936 was March 15, 1937. On or about December 10, 1936, petitioners, as individuals and as partners doing business as the Franklin Peanut Company, obtained a temporary *228 injunction restraining the collector of internal revenue for the District of Virginia from requiring them or attempting to require of them the filing of any unjust enrichment tax returns. This injunction remained in full force and effect until June 30, 1937. On June 1, 1937, the individual petitioners herein filed unjust enrichment tax returns for the years 1935 and 1936. The failure of the individual petitioners to file these returns within the statutory time was due to reasonable cause. Franklin's partnership return for the taxable year 1935 reported no unjust enrichment income. Attached to the return was a statement to the effect that Franklin was unable to furnish the data required in such returns from its books and records, that the determination of an exact average margin for the 6-year base period of 1928-1933 was practically impossible, that the records from which such facts could be determined were not kept, and that it would be too expensive to attempt to secure this information unless it was first established that a substantial tax was due. In determining the deficiencies complained of respondent did not prepare a marginal computation showing this profit per pound during *229 the tax paid period as compared with the tax imposed but not paid period. Books and records from which Franklin's average margin during the base period could be determined were not produced at the hearing. Franklin made no attempt to furnish respondent with information concerning margins of similar representative concerns similarly circumstanced. For each of the years 1919 through 1936 Franklin's net income as well as its percentage of profit from sales made were as follows: Percentage
Year
Net income
of profit
1919
$ 81,477.65
5.02
1920
69,966.30
4.48
1921
22,061.42
2.29
1922
45,981.70
4.79
1923
35,061.49
3.30
1924
37,413.72
3.08
1925
19,939.84
2.02
1926
55,179.69
5.39
1927
55,582.08
4.52
1928
28,287.49
2.23
1929
18,948.48
1.59
1930
27,042.63
2.73
1931
9,322.50
1.06
1932
6,615.00
.97
1933
22,319.33
3.20
1934
27,626.81
2.74
1935
119,770.72
11.15
1936
23,211.85
2.69
In 1933 Franklin erected a new plant which had the effect of reducing its labor costs substantially. Respondent determined that Franklin received a net income for the year 1935 from the sale of peanuts with respect to which a tax was imposed *230 but not paid in the amount of $74,275.74 and a similar income for 1936 in the amount of $6,266.02. Franklin is entitled to a deduction against its 1935 income of $5,172.64 representing expenses incurred relating to its business, which respondent disallowed. The correct amount of such net income for 1935 is $69,103.10 and for 1936 such net income is $6,266.02. Opinion As previously stated, these proceedings involve unjust enrichment taxes assessed under Title III of the Revenue Act of 1936. The deficiencies cover the calendar years 1935 and 1936 but the period with which we are concerned is from May 1, 1935 to January 6, 1936. While the petitions filed herein attack respondent's action on several grounds, the ultimate question for decision is whether or not during the period May 1, 1935 to January 6, 1936, Franklin shifted to its vendees the processing tax of one cent a pound, farmers stock. If, as petitioners contend, the tax was absorbed by Franklin and not passed to its vendees, it will be unnecessary to discuss the accounting problems raised in connection with respondent's computation of the unjust enrichment income for the year 1935. For the year 1936 the only issue is whether *231 or not Franklin absorbed the tax. If we find for petitioners on this issue, it will be unnecessary to pass upon the correctness of respondents action in determining the penalties for failure to file the returns. At the outset it should be noted that we are not directly confronted with any of the vexatious problems involving the statutory presumptions and burdens of proof usually found in the unjust enrichment tax case. Cf. Webre Steib Co., Ltd. v. Commissioner, 324 U.S. 164 (Feb. 12, 1945). Inasmuch as petitioner did not furnish the marginal information outlined in section 501 (f) concerning its operations during the base period or any data concerning the operations and activities of similar businesses, respondent did not err in his failure to determine an average margin to be used in computing the deficiencies before us. Wilson Athletic Goods Mfg. Co., 2 T.C. 70; Insular Sugar Refining Corporation, 3 T.C. 922. Petitioners have not challenged the respondent's action in this respect but seem to agree that we need concern ourselves only with the issue of determining whether Franklin did in fact absorb the tax during the period under discussion. *232 On brief petitioners suggest three arguments to support their contention that the tax was in fact not shifted. The first of these is the direct testimony of J. I. Beale, one of the petitioners, that the tax was absorbed. This witness testified unequivocally that he and his associates believed the processing tax was unconstitutional, that it would not have to be paid, and that effective May 1, 1935, Franklin absorbed the tax. This witness testified that all of the firm's competitors had entered into agreements whereby they agreed to refund to the purchasers the amount of the tax in the event it was declared unconstitutional. In spite of increasing pressure brought upon it to take a similar action, Franklin refused and to get business, undersold its competitors during this period by one-quarter to one-half cent per pound. It appears from an examination of this testimony that witness, Beale, and his associates felt that because the firm did not itemize their invoices to show that the tax was added and that Franklin's prices were somewhat lower than their competitors that Franklin was absorbing the tax. His testimony is revealing: The Court: You simply mean by that that the tax was *233 levied upon you as a processor and not upon them as your customer. The Witness: That is right; in other words, if we paid it they would not know anything about it. The Court: If you increased your price to cover the tax they would pay that increase, but not as a tax. The Witness: We increased the price to that extent. The Court: And the increase that they might pay would not be the payment of a tax, that is what you mean, isn't it? The Witness: No, it would not be a tax. We think it clear from the cited testimony as well as an examination of Beale's other testimony that Franklin felt it was paying the tax if it was not billed to customers as a separate item on its invoices. In other words, if the tax was buried in the prices the same as any other business expense then the tax was not borne by the vendee. That theory is clearly erroneous. Cf. Clinchfield Coal Corporation, 47 B.T.A. 151. The way in which the tax was passed on is immaterial. We are satisfied that [at] all times Franklin attempted to get the highest prices possible for its products. In fact, it is so conceded. Apparently, Franklin was willing to gamble on the outcome of the processing tax litigation *234 and to meet the competition of competitors who were offering refunds, undersold the market. The exact price under the market is not disclosed but the witness Beale testified that the prices were one-quarter to one-half cent a pound lower than competitors. The second argument raised by petitioners to bolster their contention that the tax was absorbed and not passed on, is based upon the testimony of the expert witness Burmeister. We have found that there was a decrease in margin during the non-tax period of May 1 to December 31, 1935, compared with the tax period of January 1 to April 30, 1935. The respondent concedes as much although his evidence shows the decrease to be narrower than that computed by petitioners. The witness Burmeister testified that this reduction in margin indicated that the tax was absorbed. His opinion was based upon a study of petitioner's Exhibit 12 and upon his own knowledge of the industry. It appears that Burmeister as an economist for the Department of Agriculture had made a study and computed an average margin for the peanut industry, from which study he was satisfied that the industry as a whole had passed the tax to the vendees. He testified that in *235 computing the average margin for the industry he assumed that all margin-influencing factors remained the same. The difficulty with the opinion expressed by Burmeister is found in his testimony on cross-examination. He testified that even though the difference in margin between the two periods here under discussion was brought about by factors other than the tax that nevertheless Franklin would have borne the tax. That thesis is, we think, erroneous. It seems clear to us that there were several margin-influencing factors which could not remain static. The Committee Report accompanying this legislation which provided for computations of margins over the preceding 6-year period would indicate that Congress felt these factors would have a tendency to level out if a long period of time was used. 1939 C.B. - 1, P. 696. See also Webre Steib Co., Ltd., supra.We think Congress was aware that these conditions could not remain the same. The respondent's expert witnesses testified that without studying all the margin-influencing factors over much longer period of time than used by petitioner in preparing its Exhibit 12, it would be impossible to determine whether or not the tax *236 had been shifted. Their testimony, based upon the exhibits and evidence submitted to the witness Burmeister, was to the effect that they could not assume that these factors remained the same and that they would be unable to tell that the tax had been shifted in a particular case. Burmeister testified on cross-examination that before he could give his opinion as an economist on whether or not Franklin bore the tax that he would have to do additional study. He further testified that he did not agree with or approve of the Congressional method of determining whether or not the tax had been absorbed. The third argument raised by petitioners in support of their contention that the tax was absorbed is the most easily answered. Petitioners cite the margin earned by the industry during the base period 1928 to 1933 and claim that Franklin was entitled to earn that margin before it could be assumed that it had sifted the tax. In the first place the average margin for the industry certainly does not meet the statutory requirement of representative concerns engaged in similar businesses and similarly circumstanced. An industry average is a far cry from the margin of a concern engaged in a similar *237 business under similar conditions. To take advantage of the use of margins of members in the same industry we think petitioners should have furnished data on similar business in the industry and locality. In any event, it is not too clear that the books and records from which Franklin's base period margin could be determined were not available. We think that the evidence with respect to the proposition of whether or not Franklin absorbed the tax during this period, at decrease in Franklin's margin in the non-tax-best demonstrates only that there was a paid period and that it undersold its competitors. The respondent has determined that Franklin passed this tax to its vendees. The presumption of correctness which attaches to the Commissioner's action in the ordinary Tax Court proceeding is to be applied here. The basic issue is whether or not petitioners have maintained the burden of showing that Franklin absorbed the tax. While the reduction in margin could be due to the desire of Franklin to absorb part of the tax, yet it could be due to other factors. See Webre Steib Co., Ltd., supra.We think that it is impossible to determine exactly what caused the decrease in *238 margin during the period May 1, 1935 to December 31, 1935, compared with the margin earned in the period January 1, 1935 to April 30, 1935. From a careful study of all the testimony in this respect we are not convinced that the reduction in margin was due to Franklin's efforts to absorb the tax. On the other hand, in view of the short length of time used as a base period in working up the margins for comparison contrary to the direction of Congress to use a longer period, and the fact that the decrease was not shown to have been effected by other margin-influencing factors, we can not find that respondent erred in determining that Franklin shifted the tax. Accordingly, we sustain the respondent thereon. Because of our holding this respect we must examine the alternative issues raised by petitioners in connection with respondent's computation of its unjust enrichment income for the year 1935. It is contended that the inventory figures used by respondent in the notice of deficiency are erroneous. We disagree. Respondent's witness testified that these figures were taken from the books and records of the company. Petitioners' evidence to dispute this conclusion was hazy, and we see no *239 reason to disturb respondent's determination in this respect. A second issue raised by petitioners is the deductibility of expenses amounting to $5,172.64 incurred in connection with business for 1935. Petitioners insist that this amount should be deducted from unjust enrichment income as valid expenses in connection with the sole business activity of Franklin. Respondent's action in disallowing this amount seems to be based on the theory that Franklin was engaged in other business operations. Inasmuch as it has not been argued on brief and the testimony is clear that Franklin's outside business activities were negligible, on this point we find in favor of petitioners. A third assignment of error is as follows: In his notice of deficiency respondent refused to permit the deduction of partners' salaries in computing the unjust enrichment income. Evidence was offered as to the reasonable value of the services of the two managing partners and our ruling reserved. We have omitted making any finding on the reasonable value of these services because in the view we take they are not deductible. Section III of the Revenue Act of 1936 provides that in computing unjust enrichment income *240 only those expenses are deductible which are deductible under Title I. Petitioners argue that it is unfair to permit corporations to deduct salaries while partners' salaries are not deductible. We can not weigh the advantages and disadvantages of the corporate form of business as compared with the partnership form. For many years prior to the taxable years involved, partnership salaries have been deemed to be a distribution of profits and were not deductible in computing partnership income under Title I. We have recently held that a partnership is not taxable entity for the purposes of the unjust enrichment tax. Lantz Brothers, 5 T.C. 896. Our holding there requires us, we think, to hold that partnership salaries are not deductible in computing partnership income under Title III. In the absence of more persuasive proof that Congress intended otherwise, we must hold that they are not deductible. See G.C.M. 21418, C.B. 1939-2, P. 249. On this point respondent is sustained. We have found that the failure on the part of the individual petitioners and the partnership to file unjust enrichment tax returns was due to reasonable cause and not wilful neglect. Under the circumstances *241 here we think that an order of a Federal court having jurisdiction of the parties restraining the collector from requiring the filing of such return is sufficient to support a finding that the delay was due to reasonable cause and not to wilful neglect. On this point petitioners are sustained. Decision will be entered under Rule 50.