## ASIATIC PETROLEUM CO., LTD. *v.* INSULAR COLLECTOR OF CUSTOMS.

No. 674.   Argued March 13, 1936.—Decided March 30, 1936.

---

[7] *Grayson* v. *Harris,* 267 U. S. 352, 358.

*Mr. Wm. D. Whitney* for petitioner.

*Mr. Lee S. Tillotson* for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The petitioner seeks review of a decision of the Supreme Court of the Philippine Islands which construed § 21 of the Philippine Tariff Act of 1909.[1] The reasons assigned are the importance of the question involved and conflict with a decision of the Court of Claims under a statute of similar import. The respondent urges that this Court is without jurisdiction to issue the writ, and if it has jurisdiction, should affirm the judgment.

The section in question provides:

"Sec. 21. That on all fuel imported into the Philippine Islands which is afterwards used for the propulsion of vessels engaged in trade with foreign countries, or between ports of the United States and the Philippine Islands, or in the Philippine coastwise trade, a re-

---

[1] 36 Stat. 130, 176.

fund shall be allowed equal to the duty imposed by law upon such fuel, less one per centum thereof, which shall be paid under such rules and regulations as may be prescribed by the insular collector of customs."

During the period between June 15, 1932, and April 15, 1933, the petitioner imported into the Philippine Islands fuel oil, paid the prescribed duties thereon, and, in turn, made sales to agents of foreign shipping concerns with the agreement that drawbacks of customs duties paid on the quantities so sold were to be for petitioner's account. The oil was put aboard vessels of British, Swedish, Dutch, Danish and Norwegian registry and used for their propulsion while engaged in trade between the Islands and foreign countries. The petitioner filed with the respondent certificates of the sales; the Surveyor of the Port of Manila superintended the transfer to each vessel and, in his return to the respondent, certified the correct weight of each lading. The petitioner then presented drawback entries and requested a refund of duties paid, as provided by § 21 of the Tariff Act. The respondent refused to authorize or pay the drawbacks on the ground that they are allowable only in respect of fuel imported and sold for use by vessels of Philippine registry. The petitioner applied to the Court of First Instance of Manila for a mandamus requiring the respondent to sign and issue the necessary warrants for refund of tax. The court denied the writ. Upon appeal, the Supreme Court held that the section applied only to fuel used by vessels of American or Philippine registry and affirmed the judgment.

*First.* This court has jurisdiction. The relevant statute is that of February 13, 1925:[2]

"That in any case in the Supreme Court of the Philippine Islands wherein the Constitution, or any statute or

---

[2] C. 229, § 7, 43 Stat. 936, 940.

treaty of the United States is involved, or wherein the value in controversy exceeds $25,000, or wherein the title or possession of real estate exceeding in value the sum of $25,000 is involved or brought in question, it shall be competent for the Supreme Court of the United States, upon the petition of a party aggrieved by the final judgment or decree, to require, by certiorari, that the cause be certified to it for review and determination  . . ."

The provision is continued in force by the Philippine Independence Act.[3]

It is incontestable that the Tariff Act of 1909 as enacted by Congress was a statute of the United States within the meaning of the Act of 1925 and that this court would have jurisdiction to review a decision involving its application,[4] were it not for certain provisions of the Act of 1916 for the government of the Islands.[5] The claim is that these repealed the Tariff Act as a law of the United States, converted it into a law of the Philippine Islands, and thus abolished our jurisdiction to review the judgment in question. The argument is grounded upon §§ 5, 6, 7, 8, and 10 of the organic act, which are copied in the margin.[6] Respondent points out that the

---

[3] March 24, 1934, § 7 (6), c. 84, 48 Stat. 456, 462; U. S. C. Tit. 48, § 1237. "Review by the Supreme Court of the United States of cases from the Philippine Islands shall be as now provided by law . . ."

[4] *Gsell* v. *Insular Collector of Customs*, 239 U. S. 93. At the time of this decision the appellate jurisdiction of this Court was governed by the Act of July 1, 1902, c. 1369, § 10, 32 Stat. 691, 695, which was substantially identical with the Act of 1925, § 7, except that it provided for review upon appeal or by writ of error instead of by certiorari.

[5] Aug. 29, 1916, c. 416, 39 Stat. 545.

[6] "Sec. 5. That the statutory laws of the United States hereafter enacted shall not apply to the Philippine Islands, except when they specifically so provide, or it is so provided in this Act.

"Sec. 6. That the laws now in force in the Philippines shall continue in force and effect, except as altered, amended, or modified

effect of these sections is to give the Philippine Legislature concurrent power with Congress to amend, alter, or repeal laws of the United States effective in the Islands, including tariff laws, with the one exception that in such tariff laws trade relations between the Islands and the United States are to continue to be governed exclusively by congressional legislation. Since 1916 the Tariff Act of 1909 has been repeatedly amended by the local legislature with the approval of the President of the United States, and the contention is that although § 21 has never been amended or repealed, the Act of 1916 and the action taken by the Phillippine Legislature thereunder have converted the Tariff Act into a local law and stripped it of its character as an act of Congress. We do not agree. Section 21 derives force from the legislative action of Congress. Neither the provisions of the organic act nor the amendment of other sections by the Philippine Legislature changed the source of its authority. The erection

---

herein, until altered, amended, or repealed by the legislative authority herein provided or by Act of Congress of the United States.

"Sec. 7. That the legislative authority herein provided shall have power, when not inconsistent with this Act, by due enactment to amend, alter, modify, or repeal any law, civil or criminal, continued in force by this Act as it may from time to time see fit.

"This power shall specifically extend with the limitation herein provided as to the tariff to all laws relating to revenue and taxation in effect in the Philippines.

"Sec. 8. That general legislative power, except as otherwise herein provided, is hereby granted to the Philippine Legislature, authorized by this Act.

"Sec. 10: That while this Act provides that the Philippine government shall have the authority to enact a tariff law the trade relations between the islands and the United States shall continue to be governed exclusively by laws of the Congress of the United States: *Provided,* That tariff acts or acts amendatory to the tariff of the Philippine Islands shall not become law until they shall receive the approval of the President of the United States . . ."

of a local legislature in a territory or a possession and the grant of legislative power do not deprive Congress of the reserved power to legislate for the territory or possession, or abrogate existing congressional legislation in force therein.[7]

It is argued that § 15 of the Independence Act[8] has repealed the Act of 1909. This section is, in part,— "Except as otherwise provided in this Act, all laws or parts of laws relating to the present government of the Philippine Islands and its administration are hereby repealed as of the date of the inauguration of the government of the Commonwealth of the Philippine Islands."

The respondent contends that tariff acts belong to the administration of government and are within the scope of the repeal. But we think that when the phraseology of the Independence Act is viewed in its setting and is compared with § 2 of Article XV of the Constitution of the Commonwealth of the Philippine Islands, continuing all laws of the Islands in force until the inauguration of the Commonwealth and thereafter until amended, altered, modified, or repealed by the National Assembly, it becomes evident that laws relating to such subjects as the tariff were not repealed but only those dealing with administrative agencies and their procedure which would be inconsistent with the new frame of government. In any event the Independence Act cannot operate retroactively to deprive the petitioner of rights vested before its adoption.

*Second.* The petitioner must prevail upon the merits. The court below limited the scope of the drawback provision by inserting, in effect, after the word "vessels," as it appears in § 21, the words "of Philippine or American registry." The statute is plain upon its face. The phrase used is "vessels engaged in trade with foreign

---

[7] Compare *National Bank* v. *County of Yankton,* 101 U. S. 129.

[8] Mar. 24, 1934, c. 84, § 15, 48 Stat. 456, 464.

countries." The court restricted the scope of the expression upon the view that the drawback was authorized in the interest of the merchant marine of the Islands and that of the United States. We are not referred to any facts to support this conclusion. An equally plausible inference is that the purpose of the provision was to afford Philippine merchants trade opportunities equal to those of foreign merchants in supplying fuel oil to ships. We are not at liberty to limit the application of so clear and unambiguous a statutory direction in the absence of convincing evidence that the intent of Congress was less sweeping than its words import. We hold that the section applies to fuel sold to all vessels, of whatever registry, trading with foreign countries.[9]

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

---

[9] An act of Congress providing, in identical terms, for a drawback of tariff duties, was held by the Court of Claims to apply in respect of all vessels whether of domestic or foreign registry. *Kennedy* v. *United States,* 23 Ct. Cls. 363.