## CUDAHY BROS. CO. v. LA BUDDE et al.
### Nos. 6165, 6166.

Circuit Court of Appeals, Seventh Circuit.
Nov. 30, 1937.

James W. Morris, Asst. Atty. Gen., Sewall Key, Helen Carloss, and George H. Zeutzius, Sp. Assts. to Atty. Gen., and B. J. Husting, U. S. Atty., and E. J. Koelzer, Asst. U. S. Atty., both of Milwaukee, Wis., for appellant.

James D. Shaw and Van B. Wake, both of Milwaukee, Wis., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Appellee, in view of the decision of the Supreme Court in Anniston Manufacturing Co. v. Davis, 301 U.S. 337, 57 U.S. 816, 81 L.Ed. 1143, which is fully determinative of all the issues involved in 6166, confesses error in that cause.

6165 is an appeal from a judgment in favor of plaintiff, present appellee, rendered on demurrer to the complaint filed in the District Court, the collector, defendant and appellant here, having elected to stand by its demurrer. The complaint sought and the court allowed a refund of processing taxes, imposed under section 9 (a) of the Agricultural Adjustment Act, as amended (U.S.C.Supp. II, title 7, § 609 (a), 7 U.S.C.A. § 609(a), assessed and collected upon meat products processed by appellee and thereafter exported by it to foreign countries. These taxes were paid in late 1934 and 1935. The exportations were made prior to January 6, 1936. The

sole question involved is whether appellee has the right to maintain this suit, begun prior to the Supreme Court's decision holding the Agricultural Adjustment Act invalid, in a form of action admitted by appellant to have been correct at the time suit was begun; or, otherwise stated, whether the later acts of Congress have nullified the remedy and in lieu thereof, prescribed as the sole remedy the procedure approved by the Supreme Court in Anniston Mfg. Co. v. Davis, supra.

The suit was grounded upon section 17 (a) of the Agricultural Adjustment Act as amended (U.S.C.Supp. II, title 7, § 617 (a), 7 U.S.C.A. § 617(a), which provides that upon exportation of any product processed from a commodity, with respect to which a tax "has been paid or is payable," such "tax due and payable or due and paid shall be credited or refunded" to the consignor named in the bill of lading under which the product is exported or "to the shipper or to the person liable for the tax provided the consignor waives any claims thereto in favor of" such other person.

Subsequent to the decision in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, holding the Agricultural Adjustment Act unconstitutional, Congress enacted the Revenue Act of 1936, section 601(a) of which (7 U.S. C.A. § 641(a) provides, in part, that the provisions of sections 17 of the Agricultural Adjustment Act as amended be re-enacted "but only for the purpose of allowing refunds in accordance therewith in cases where * * * the exportation * * * took place prior to January 6, 1936."

It will be observed that originally Congress, by section 17 (48 Stat. 40), with the obvious intent of stimulating exportation and foreign trade and to relieve the country of an undesirable domestic surplus, placed exported goods in an exempt class, against which no tax was intended to be assessed or collected. It went even further and provided that one exporting commodities might, upon giving bond ·to the Secretary of the Treasury, process the commodity and export same without payment of any tax. That exported goods were exempt and that Congress intended by the exemption to encourage exportation is evidenced by the further provision of the section that any tax paid should be refunded to the consignor so exporting and ·to no other person, except at the direction of the consignor. This provision was sim-

ilar to other so-called "drawback" statutes, one of which was before the Supreme Court in Asiatic Petroleum Co. v. Insular Collector, 297 U.S. 666, 56 S.Ct. 651, 80 L.Ed. 967, where the purpose of exemption was commented upon, and another in Campbell et al. v. United States, 107 U. S. 407, 2 S.Ct. 759, 763, 27 L.Ed. 592, where the court remarked that when Congress declared that upon exportation a "drawback" of the duty paid, should be allowed, there "resulted a contract that when exported the government would refund, repay, pay back, this amount as a drawback to the importer." Thus, we observe, appellee sought to recover no taxes collected under an invalid statute but rather refund of taxes previously paid, upon proof that the commodity taxed had gone into exportation.

It is insisted by appellant, however, that the language of the act of 1936 forbids the institution of or maintenance of such suits and that Congress has by its legislation placed suits for drawback of taxes upon exportation in the same class as suits brought to recover taxes wrongfully collected under an invalid act. He relies, first, upon section 601(b) of the act (7 U.S.C.A. § 641(b), in part as follows: "Except for refunds under section 15(a) of the Agricultural Adjustment Act, [615(a) of this title] as reenacted herein, no refund under this section shall be made to the processor or other person who paid or was liable for the tax with respect to the articles on which the claim is based."

This language, it is insisted, constitutes a specific prohibition of such suits as the one before us. But it is to be observed that in subsection (a) of the same section, Congress expressly re-enacted section 17 allowing the drawback recovery, to the extent necessary for "the purpose of allowing refunds in accordance therewith in cases where * * * the exportation * * * took place prior to January 6, 1936." To our minds it could not have been the intent to provide specifically in subsection (a) for preservation of the remedy for drawback in case of exportation and then immediately following, by subsection (b), to provide that the remedy specifically recognized by subsection (a) was abolished. Rather, we believe, reconciling the two sections, it was the intent, by subsection (b), to deal only with refunds governed by the new legislation, of taxes illegally collected under an invalid

statute. The words "refund under this section" must have been intended to refer to the new remedy created by title 7 of the Revenue Act of 1936 (section 902 et seq. [7 U.S.C.A. § 644 et seq.]), covering procedure for the recovery of taxes illegally collected. Any other interpretation nullifies entirely subsection (a), which re-enacts section 17 for the purpose of allowing refunds in case of exportation.

House committee report No. 2475, 74th Congress, 2d Session, pp. 13, 14, in discussing the proposed act, said that it was the intent to preserve the exemption from tax of articles exported prior to January 6, 1936, created by section 17(a). The senate committee, in report No. 2156, 74th Congress, 2d Session, pp. 36, 37, observed that the legislation would serve to remove doubt of the commissioner as to the propriety of his continuing to pay refunds under section 17(a) existing after the Agricultural Adjustment Act was held unconstitutional where goods were exported prior to January 6, 1936, the date of the decision. The committee said that it was the purpose of section 601 to re-enact section 17(a) allowing refund for exportation made prior to January 6, 1936, and that the enactment of the section would remove the doubt as to the legal authority of the commissioner "to continue the making of such refunds." The committee reported further that "the claims for refund of other processors are adequately provided for by title 7." Remembering that the refund is due the consignor as such and not to the processor as such, under section 17(a) it would seem clear that the language of the act of 1936 was not intended to nullify that which was provided in (a) where Congress re-enacted section 17 for the purpose of allowing the refund.

■ Appellant, however, relies further upon title 7 of the Revenue Act of 1936, specifically section 906(a) of the act (7 U.S.C.A. § 648(a), which provides that, notwithstanding any other provision of law, no suit shall be brought after the enactment, in any court for the refund of moneys paid or collected as processing tax, as defined therein, under the Agricultural Adjustment Act, except as provided in that section. The section proceeds to prescribe in detail a specific procedure for the recovery of taxes claimed to have been collected illegally. But it is observed, from section 902 (7 U.S.C.A. § 644), that the act contemplated administration of claims for re-

funds claimed to be due because of "court decisions," obviously taxes collected under an unconstitutional statute. Under the procedure there specified the claimant must prove that he has not passed on or passed back the burden of the tax. This language, it seems to us, does not apply to claims for export drawbacks. In such cases, the consignor has been advised by the statute that the exported product is tax free. He is competing, not with others in his own country who have paid the same tax but with tax free producers of other countries, or with consignors who have exported without payment of tax under bond as provided by the statute. The right of recovery in the consignor rightfully dates not from the payment of the tax but rather from the date of the exportation.

■ Then too it is apparent that all of the provisions of title 7 are inapplicable to any refund authorized because of exportation. It extends the exemption also to drawbacks under the Tariff Act of 1930 (19 U.S.C.A. § 1001 et seq.). Sections 902, 903, 905, 906, and 910 (7 U.S.C.A. §§ 644, 645, 647, 648, 652) have to do with claims for refund on the ground of illegal collection. It is not believed that it was the intent of Congress in title 7 to undo what it had done in section 601(a) title 4 (7 U.S.C.A. § 641(a), and, as we have pointed out, it is unreasonable to conclude that section 601(b), 7 U.S.C.A. § 641(b), nullifies section 601(a). Familiar is the principle that repeals will not be implied unless there is a positive repugnance between the provisions of the new law and those of the old and that the presumption against such intention to repeal is strongest when the two acts are passed not only at the same session but on the same date. Graham & Foster v. Goodcell, 282 U.S. 409, 51 S.Ct. 186, 75 L.Ed. 415. Here, indeed, the two subsections are a part of the same section.

■ We conclude that Congress, by its re-enactment of section 17, recognized the cause of action and the established remedy therefor; that to place the consignor of exported goods declared by law to be exempt from taxation in the same category with processors who are suing to recover taxes illegally collected under an invalid act of Congress and to require them to conform to a procedure which is inapplicable to their situation and the details of

which, under the regulations of the commissioner, are wholly inapplicable to the facts in case of exportation, is to do violence to the intent of Congress. We believe that Congress has not rescinded its obvious intent to exempt exported goods from taxation, but rather, that its intent was to protect in good faith those persons whom it induced to make exportation under an act providing for such exemption and by re-enactment of section 17(a) to recognize the obligation to perform the government's contract with such exporting consignors.

The decree in 6166 is reversed; that in 6165 is affirmed.

Robert Branand, Jr., and Edward B. Hayes, both of Chicago, Ill., for appellant.

Arthur E. Otten, of Buffalo, N. Y., and L. F. Binkley, of Chicago, Ill., for appellee Utah-Idaho Sugar Co.

Hubert O. Wolfe and Francis J. Hart, both of Milwaukee, Wis., for appellee National Terminals Corporation.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.