INSULAR SUGAR REFINING CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

No. 191.

Circuit Court of Appeals, Second Circuit.

June 11, 1945.

Writ of Certiorari Denied Oct. 8, 1945.

See 66 S.Ct. 56.

J. Sterling Halstead, of New York City, for petitioner.

Samuel O. Clark, Jr., Sewall Key, and Newton K. Fox, all of Washington, D. C., for respondent.

Before EVANS and CHASE, Circuit Judges, and HINCKS, District Judge.

EVANS, Circuit Judge.

The Tax Court held petitioner liable for $6,152.37 [1] unjust enrichment taxes for 1935 and 1936. 3 T.C. 922. Dissatisfied with this ruling, it is here on appeal.

Petitioner is a Philippine company engaged in refining sugar. The sugar is shipped in cotton bags purchased from a United States company. These cotton bags were subjected to a processing tax beginning August 1, 1933. A claim based on a demand for a refund of these taxes constitutes the basis of the instant unjust enrichment tax. Sec. 501(a) (2) of the Revenue Act of 1936.[2]

Petitioner advances three reasons for reversal. It contends:

(1) It is exempt from the tax on refunds because of Sec. 501 of the Act of 1936 which relieves a *taxpayer* of taxes on the return of a Federal excise tax, and that the return of this tax was due to the fact that the cotton bags, the subject of the tax, were *exports,* exempt from the tax and entitled to "drawbacks."

(2) Petitioner is not liable to the tax because it bore the burden of the processing tax and did not pass it on to its customers.

(3) The Tax Court denied petitioner leave to amend its complaint, to conform to the proof, which showed drawbacks were received in petitioner's 1936 fiscal year and not in its 1935 fiscal year. This error affects one year's interest on part of the tax.

On August 1, 1933 (the day the processing tax went into effect) petitioner raised the price of its sugar from $4.50 to $4.60 per hundred weight, although the tax amounted to but 9/10¢ on a large cotton bag, and 2.2¢ on a bale of pockets (small cotton bags used when the sugar was shipped in smaller quantities). The Tax Court found as facts that when variations occurred in sugar prices they were always in the amount of at least 5¢ per hundred pounds. It found that the cotton processing tax was not separately billed to the purchasers of sugar, and *"it was petitioner's intention neither to shift the tax nor to absorb it."*[3]

Inasmuch as petitioner had raised its price of sugar the day the processing tax went into effect, but furnished no evidence to the Tax Court as to the "relative margins of profit before and after the incidence of the tax," the Tax Court held that the petitioner failed to establish that it had not shifted the processing tax burden and therefore was liable for the unjust enrichment tax.

In addition to Sec. 501(a) (2) above quoted, Sec. 501(b) of the same Act, and Sections 17(a) of the Agricultural Adjustment Act, 7 U.S.C.A. § 617(a), are also involved. They are:

Sec. 501(b) "The net income * * * shall not include the net income from * * * or from refund or credit of Federal excise tax with respect to any article * * * (3) if under the terms of any statute the taxpayer would have been entitled to a refund from the United States of the Federal excise tax with respect to the article otherwise than as an erroneous or illegal collection * * *."

Sec. 17(a) "Upon the exportation * * * to the Philippine Islands * * * of any product processed wholly or partly from a commodity with respect to which product or commodity a tax has been paid * * *

|  | Tax | Penalty |
|---|---|---|
| [1] Fiscal year ending Nov. 30, 1935 | $4,126.58 | $1,031.65 |
| " " " " ", 1936 | 795.31 | 198.83 |

[2] "Sec. 501(a). The following taxes shall be levied * * *

"(2) A tax equal to 80 per centum of the net income from reimbursement received by such person from his vendors of amounts representing Federal excise-tax burdens included in prices paid by such person to such vendors, to the extent that such net income does not exceed the amount of such Federal excise-tax burden which such person in turn shifted to his vendees." 26 U.S.C.A. Int. Rev. Acts, page 944.

[3] The Tax Court also found: "When shipments of bags were made to it petitioner set up a debit memorandum on its books in the approximate amount of the tax included in the price of the bags. This item was treated as an asset and was cancelled when the reimbursement was received. Neither petitioner nor Suchar (Petitioner's parent) instructed Balfour (petitioner's agent in California) to add the cotton processing tax to the sale price of sugar."

under this title, the tax * * * due and paid shall be * * * refunded. Under regulations prescribed by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, the credit or refund shall be allowed to the *consignor* named in the bill of lading under which the product is exported or to the *shipper* or to the *person liable for the tax provided the consignor waives any claim thereto in favor of such shipper or person liable for the tax.*" (Italics ours.)

(1) *Exemption on Basis of Export Exemption.* It is petitioner's contention that its immunity from the unjust enrichment tax is founded on the "export" exemption —the original processing tax expressly provided, in order to promote necessary export trade, that taxes on such exports were to be refunded, or need not even be paid if a bond were posted to cover same. This ground of exemption is entirely independent of its claim for exemption on the basis of having itself borne the tax.

In order to support this theory, petitioner must bring itself within the terms of the statute and regulations. The statute exempts Sec. 501(b) (3) a *taxpayer* who would have been entitled to a refund, and in subdivision (j) (5) defines the term "taxpayer" to mean *"a person subject to a tax imposed by this section."*

Reg. 83, Art. 3, defines a person who may file a claim for refund as follows:

"A. The consignor named in the bill of lading under which the product is exported shall be entitled to make claim for refund unless he shall have waived such right to the shipper. Consignor named in the bill of lading means the person named in the bill of lading as the person from whom the carrier received the product for shipment.

"B. The shipper, if other than the consignor named in the bill of lading, shall be entitled to make claim for the refund only if the consignor shall have waived any claim to such refund to him. *In such case, the term shipper means the person for whom the consignor named in the bill of lading is handling the product for shipment."*

The italicized sentence is the one on which petitioner places reliance. It says the Pacific Diamond H. Bag Company, the consignor, was "handling the bags for petitioner," because prior to shipment, petitioner's trade name had been imprinted on the sugar bags and because the Diamond Co. had delivered the bags to the carrier "for the purpose of transmission" to petitioner.

On this issue the Tax Court held that petitioner was not the consignor (but was the consignee), but conceding that it might have been "shipper," the actual consignor had not only not waived its right to claim the refund—as required by the statute—but had actually made such claim and received the refund. We think this conclusion is unavoidable. Congress was attempting to protect the government from numerous diverse claims for such legitimate refunds by specifically designating the person to whom it would grant the refund. It selected the consignor, and permitted a substitute for such consignor only if he waived his right. Such waiver was an insuperable condition precedent to petitioner's right to make such claim.

As we understand Sec. 501(b) (3), it was intended to exempt from the unjust enrichment tax, refunds which were returned to taxpayer not by virtue of the illegality of their collection, but, inter alia, because they had been taxes imposed on exports which Congress meant to favor by exemption from such taxes. The statute exempted a taxpayer who "would have been entitled to a refund" of excise tax. Petitioner was not such a person who was "entitled to a refund." It could only make a valid claim if (first) the consignor waived his right to the refund, and (secondly) if it proved itself to be the "shipper" for whom the consignor was handling the product for shipment.

We are satisfied there was evidence in support of the Tax Court's finding against petitioner on each of these factual issues.

*Shifting the Burden of the Tax.* If petitioner bore this processing tax itself, it has not been unjustly enriched so as to be liable, Sec. 501(a) (2), for the tax in question. The Tax Court held petitioner had "failed to establish" the fact that it bore the burden of this tax. It said:

"Here the evidence shows that on the date upon which the cotton processing tax went into effect, August 1, 1933, petitioner raised the price of its sugar by 10 cents per 100 pounds. This was sufficient to pass on the burden of the tax and more, for the tax on each container holding 100 pounds of sugar did not exceed 2.2 cents. Price

changes in petitioner's sugar were made in keeping with similar changes made by petitioner's two principal domestic competitors. Therefore, it is fair to assume that the August 1, 1933 increase was put into effect because the competitors had decided to follow this course. The record does not disclose why these competitors raised their prices coincident with the levying of the cotton processing tax. It may well have been that they did so in order to shift the tax burden while taking advantage of a more favorable market. If so, then petitioner, too, must be said to have done the same."

We have here an issue of fact. The Tax Court has made a finding. We are willing to admit there is evidence which supports petitioner's argument. Our duty only permits us to inquire whether there is a conflict.

*Refusal of Taxpayer's Motion to Amend.* Petitioner sought to amend its pleadings to conform to the truth, i. e., that the refunds were not received in 1935, as taxed to it by the Commissioner but, in the most part, were received in 1936. The Commissioner was probably misled into this determination by a mistake in the explanatory affidavits attached to the original returns. Therefrom it was easily assumed that the $5,158.22 statement was affixed to the 1935 return and the $1,200.46 statement was affixed to the 1936 return, when as a matter of fact the contrary was true. It was a case of making a mistake of the figures. The smaller amount was paid in 1935, and the larger amount in 1936. In the same years payments were made to petitioner's parent corporation, and by it, in 1936, to petitioner.

There is sufficient documentary evidence to clearly substantiate this claim of petitioner and we feel it was an abuse of discretion on the Tax Court's part to refuse to permit the amendment of the pleadings to conform to the proof.

The cause is remanded to the Tax Court with direction to amend its order to conform to the ruling here made.

HINCKS, District Judge (dissenting).

Under Sec. 501(b) (3) of the Revenue Act of 1936, 49 Stat. 1648, 26 U.S.C.A. Int. Rev. Acts, page 944, the appellant, Insular, was exempt from the so-called windfall tax (tax on unjust enrichment) imposed by said act, Sec. 501(a), if under any statute it *"would have been entitled"* to a refund from the United States of the Federal excise tax * * * otherwise than as an erroneous or illegal collection * * *." The use of the past subjunctive "would have been entitled" clearly imports a contrary to fact condition which, since not expressed, must be implied. And plainly the condition to be implied is in substance the situation and the legal relationships which existed after the exportation had been accomplished and Insular had paid the processing tax to its vendor Diamond and before Diamond had collected a refund of the tax from the government. For, of course, when the statute spoke of a taxpayer who would "have been entitled to a refund" it must have meant a taxpayer so entitled before any refund therefor had been made; after the refund of a specific tax is made the right to a refund, having been discharged, no longer continues.

Under Sec. 17(a) of the Agricultural Adjustment Act, 7 U.S.C.A. 617(a), upon the exportation of the bags with respect to which Insular had paid the processing tax a refund of the tax was required and the refund was allowable to "the consignor named in the bill of lading under which the product is exported or to the shipper * * * provided the consignor waives any claim thereto in favor of such shipper * * *."

The relevant situation upon which the implied condition of Sec. 501(b) (3) depended, was as follows. Diamond, the middleman, had paid the processing tax to the manufacturer and had been reimbursed therefor by Insular, its vendee. Insular having acquired title to the bags in this country was the shipper as well as the consignee. Diamond, to be sure, was the consignor but in that capacity acted only as the agent for Insular, the owner. Diamond had notified Insular in advance of the sales as follows: "In the event it is determined that on any bags herein referred to, seller is entitled to refund of all or any part of such tax, and when and if payment of such refund is received by seller, the amount of such payment received will be remitted to the buyer."

This notice, fortified as it was by subsequent practice, constituted an offer on the part of Diamond to prosecute necessary

claims for refund for the benefit of its customers, including Insular, who had already reimbursed it for its payment of the tax to the manufacturer.

In this situation Insular had a choice of action. By acquiescence it might avail itself of Diamond's proffered services in making claim for the refund and accounting for the proceeds; in other words, Insular might avail itself of Diamond's services as its collection agent. Or, having already reimbursed Diamond for its payment of the processing tax, Insular might legally proceed to collect the refund itself. To be sure, to perfect a claim for refund in its own name as shipper—which it was—Insular would have needed among other things Diamond's waiver. But there is utterly nothing in the record to suggest that Diamond, which had already acknowledged Insular's beneficial interest in the refund, would not have cooperated to that end by voluntarily furnishing the necessary waiver of its right as consignor. And if it had objected, the relationship of the parties was such that Insular could have compelled the execution of the necessary waiver. Thus viewed, in the situation which the statute envisaged Insular "would have been entitled" to the refund and to any waiver by Diamond necessary to effectuate the refund. For present purposes, it makes no difference that in that situation Insular might have proceeded either to collect the refund directly upon a waiver by Diamond or indirectly through Diamond, which in its role as consignor and claimant would be acting as Insular's agent.

No one will dispute that in the situation envisaged the refund would have been allowable not because of the invalidity of the processing tax but because it was required to accomplish a drawback provided by Congress under the Agricultural Adjustment Act to encourage and sustain foreign commerce. Cudahy Bros. v. LaBudde, 7 Cir., 92 F.2d 937, certiorari denied, 303 U.S. 659, 58 S.Ct. 763, 82 L.Ed. 1118.

My conclusion seems to me to be wholly consistent with the applicable Revenue Act and the Agricultural Adjustment Act. Yet it gives effect to the clear Congressional intent, just referred to, to save our foreign trade from the dampening effect of the processing tax,—an objective which is frustrated if the proceeds of the drawback are subjected to the windfall tax.

Carl B. Sturzenacker and Philip N. Krasne, both of Los Angeles, Cal., for appellant.

Robert E. Paradise, William J. DeMartini, Lloyd & Paradise, all of Los Angeles, Cal., for appellee.