**UNITED STATES of America,
Plaintiff,**

**v.**

**Theodoro H. ANGCOG, Defendant.**

**Crim. No. 46–60.**

District Court of Guam.

Jan. 25, 1961.

H. G. Homme, Jr., U. S. Atty., and Olen W. Burnett, Asst. U. S. Atty., District of Guam, Agana, Guam, for plaintiff.

J. C. Arriola of Arriola, Bohn & Gayle, Agana, Guam, for defendant.

GILMARTIN, District Judge.

An information was filed against the defendant in this Court on August 23, 1960. It contained three counts: Count One: violation of 8 U.S.C. § 1326; Count Two: violation of 18 U.S.C. § 2152; and Count Three: violation of 18 U.S.C. § 2199. The defendant has pleaded "guilty" to Count One and Count Three but "not guilty" to Count Two. The following is the complete text of Count Two as it appears in the information:

"That on the 18th day of August, 1960, Theodoro H. Angcog, knowing-

2. See Rice v. Pennsylvania R. Co., 2 Cir., 202 F.2d 861.

ly, wilfully, and unlawfully entered the Guam Island Naval Defensive Sea Area, a defensive sea area established under the authority of an Executive Order of the President of the United States, for purposes of national defense, to-wit: Executive Order 8683, dated February 14, 1941, as amended April 2, 1941, while the said defendant was then and there a stowaway upon the SS Hawaiian Bear, all in violation of Section 2152 of Title 18, United States Code."

On October 24, 1960, the defendant filed a motion to dismiss Count Two of the information for failure of that count to "state facts sufficient to constitute an offense against the United States." At the trial of this case held on October 26, 1960, this Court denied the motion. However, the defendant moved to vacate the order denying his motion, the motion to vacate was granted, and, therefore, the defendant's motion to dismiss is once more pending.

# I

The code section which the defendant is charged with violating reads,

"  *   *   * Whoever knowingly, willfully, or wantonly violates any duly authorized and promulgated order or regulation of the President governing persons or vessels within the limits of defensive sea areas, which the President, for purposes of national defense, may from time to time establish by executive order—

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both." 18 U.S.C.A. § 2152.

The executive order referred to in Count Two reads as follows:

"*By virtue of the authority vested in me by the provisions of section 44 of the Criminal Code, as amended (U.S.C., title 18, sec. 96), and section 4 of the Air Commerce Act approved May 20, 1926 (44 Stat. 570, U.S.C., title 49, sec. 174) the territorial waters between the extreme highwater marks and the three-mile marine boundaries surrounding the islands of* Rose, Tutuila, and *Guam, in the Pacific Ocean, are hereby established and reserved as naval defensive sea areas for purposes of national defense, such areas to be known, respectively,* as 'Rose Island Naval Defensive Sea Area', 'Tutuila Island Naval Defensive Sea Area', and *'Guam Island Naval Defensive Sea Area';* and the airspaces over the said territorial waters and islands are hereby set apart and reserved as naval airspace reservations for purposes of national defense, such reservations to be known, respectively, as 'Rose Island Naval Airspace Reservation', 'Tutuila Island Naval Airspace Reservation', and 'Guam Island Naval Airspace Reservation.'

"*At no time shall any person, other than persons on public vessels of the United States, enter any of the naval defensive sea areas herein set apart and reserved,* nor shall any vessel or other craft, other than public vessels of the United States, be navigated into such areas, *unless authorized by the Secretary of the Navy.*

"At no time shall any aircraft, other than public aircraft of the United States, be navigated into any of the naval airspace reservations herein set apart and reserved, unless authorized by the Secretary of the Navy.

"The provisions of the preceding paragraphs shall be enforced by the Secretary of the Navy, with the cooperation of the local law enforcement officers of the United States; and the Secretary of the Navy is hereby authorized to prescribe such regulations as may be necessary to carry out such provisions.

"*Any person violating any of the provisions of this order relating to the above-named naval defensive sea areas shall be subject to the penalties provided by section 44 of the Criminal Code as amended (U.S.C., title*

*18, sec. 96)*, and any person violating any of the provisions of this order relating to the above-named naval airspace reservations shall be subject to the penalties prescribed by the Civil Aeronautics Act of 1938 (52 Stat. 973). Exec. Order No. 8683, 3 C.F.R., 1943 Cum.Supp., 894 as amended Exec. Order No. 8729, 3 C.F.R., 1943 Cum.Supp., 919" (emphasis added).[1]

The "section 44 of the Criminal Code as amended (U.S.C., title 18, sec. 96),"[2] cited in Executive Order No. 8683, presently appears as 18 U.S.C.A. § 2152, quoted supra.

## II

In 1898 the United States acquired Guam from Spain, under the Treaty of Paris:

"Article II.

"Spain cedes to the United States * * * the island of Guam in the Marianas or Ladrones." Treaty of Peace with Spain, Dec. 10, 1898, 30 Stat. 1754, 1755 (1899).

This acquisition necessarily included the waters adjoining the territory, see Shively v. Bowlby, 1894, 152 U.S. 1, 57, 14 S.Ct. 548, 38 L.Ed. 331, which waters are comprised of "a marginal belt of the sea extending from the coast line outward a marine league, or three geographic miles." Cunard S. S. Co. v. Mellon, 1923, 262 U.S. 100, 122, 43 S.Ct. 504, 507, 67 L.Ed. 894.

Prior to the enactment, in 1950, of the Organic Act of Guam, 64 Stat. 384 (1950), Guam was ruled by a provisional government created by the executive branch of the federal government. By executive order President William McKinley turned control of Guam over to the Secretary of the Navy:

"Executive Mansion,
Washington, D. C.,
December 23, 1898.

"The island of Guam in the Ladrones is hereby placed under the control of the Department of the Navy. The Secretary of the Navy will take such steps as may be necessary to establish the authority of the United States and to give it the necessary protection and Government.

"William McKinley." Exec. Order No. 108–A in 1950 U.S.Code Cong. Service 2856.

This executive order remained in effect up to August 1, 1950, the effective date

---

1. Executive Order No. 8683 was amended again, subsequent to the passage of the Organic Act of Guam in 1950, 48 U.S. C.A. § 1421 et seq.: *"By virtue of the authority vested in me by section 2152 of title 18 of the United States Code and section 4 of the Air Commerce Act of 1926 (44 Stat. 570; 49 U.S.C. 174), the following-designated naval defensive sea areas* and naval airspace reservations, *established by Executive Order No. 8683 of February 14, 1941, as amended by Executive Order No. 8729 of April 2, 1941 are hereby discontinued: 1. Rose Island Naval Defensive Sea Area. 2.* Rose Island Naval Airspace Reservation. *3. Tutuila Island Naval Defensive Sea Area.* 4. Tutuila Island Naval Airspace Reservation." Exec. Order No. 10341, 3 C.F.R., 1949–53 Comp., 864 (1958) U.S. Code Congressional and Administrative News 1952, p. 1045, (emphasis added.) This executive order, in other words, discontinued *all* naval defensive sea areas

established by Executive Order No. 8683 *except* for the Guam Island Naval Defensive Sea Area, thereby leaving the latter intact and reaffirming its existence.

2. "Whoever shall * * * knowingly, willfully, or wantonly violate any duly authorized and promulgated order or regulation of the President governing persons or vessels within the limits of defensive sea areas, which defensive sea areas are hereby authorized to be established by order of the President from time to time as may be necessary in his discretion for purposes of national defense, shall be punished on conviction thereof in a district or circuit court of appeals of the United States for the district or circuit in which the offense is committed, or into which the offender is first brought, by a fine of not more than $5,000, or by imprisonment for a term not exceeding five years, or by both, in the discretion of the court * * *." 18 U.S.C. § 96 (1946 ed.).

of the Organic Act of Guam. Cf. Exec. Order No. 10077, 3 C.F.R., 1949–53 Comp., 279 (1958) with Exec. Order No. 10137, 3 C.F.R., 1949–53 Comp., 320–21 (1958), 48 U.S.C.A. § 1421 note.

The President is the Commander in Chief of the United States Armed Forces, U.S.Const., Art. II, § 2, cl. 1, and it was in this capacity that the President possessed his authority to govern Guam.

"Guam having been ceded to the United States by the treaty of Paris of December 10, 1898, was necessarily governed by the military power of this country, because the island has never been organized as a Territory. Woog v. United States, 1913, 48 Ct.Cl. 80, 92.

"The political status of * * * [Guam] is anomalous. Neither the Constitution nor the laws of the United States have been extended to * * * [it], and the only administrative authority existing in * * * [it] is that derived mediately or immediately from the President as Commander in Chief of the Army and Navy of the United States." 25 Op.Atty.Gen. 292 (1904).

As noted supra, the responsibility for governing Guam was delegated by the President to his agent, the Secretary of the Navy.

"* * * The Secretary of the Navy carried out his functions through Naval Governors. The Naval Governors had to all intents and purposes almost complete powers." United States v. Seagraves, D.C. Guam 1951, 100 F.Supp. 424, 425.

The power of the Naval Governor.

"* * * was intended to be plenary. He * * * held the supreme legislative, executive, and judicial authority of the island." 25 Op. Atty.Gen. 59, 61 (1903).

### III

At the time of the cession by Spain of Guam to the United States, Congress could have enacted organic legislation for the island, because the Constitution gives to Congress the power to govern and control United States possessions:

"The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States * * *." U.S.Const., Art. IV, § 3, cl. 2.

However, Congress did not elect to exercise that right until 1950, when it enacted the Organic Act of Guam. 64 Stat. 384 (1950).

The defendant's argument, in support of his motion to dismiss Count Two herein, is that "the Organic Act of Guam, as amended, superseded and voided the provisions of Executive Order No. 8683." Defendant's Memorandum 2. He cites the following portion of the Organic Act as being the section relevant to his argument:

"Sec. 33. Nothing contained herein shall be construed as limiting the authority of the President to designate *parts* of Guam as naval or military reservations, nor to restrict his authority to treat Guam as a closed port with respect to the vessels and aircraft of *foreign nations*." [64 Stat. 393 (1950).] Defendant's Memorandum 2 (defendant's emphasis).

It must be noted that this section of the Organic Act does not *expressly* abrogate the executive order under consideration. For this reason, the defendant is compelled to fall back upon the argument that the Organic Act repeals the executive order *by implication*.

▮ Since executive orders have the force and effect of statutes, United States v. J. D. Streett & Co., D.C.E.D.Mo.1957, 151 F.Supp. 469, 476 modified 8 Cir., 1958, 256 F.2d 557, rules of statutory construction will be applied to the executive order in question.

▮ The repeal of a law, by an implication arising from a subsequent one, is not favored. Rosenberg v. United States, 1953, 346 U.S. 273, 294, 73 S.Ct. 1152, 97 L.Ed. 1607.

" * * * A law is not to be construed as impliedly repealing a prior law *unless no other reasonable construction can be applied.*" United States v. Jackson, 1938, 302 U.S. 628, 631, 58 S.Ct. 390, 392, 82 L.Ed. 488 (emphasis added).

"Repeals by implication are to be avoided *if any other rational construction of the statute may retain the status quo of the existing law.*" Birnie v. Permanente Metals Corp., 9 Cir., 1951, 192 F.2d 752, 754 (emphasis added).

■ By its very nature, the Organic Act of Guam, the passage of which in 1950 was an exercise of Congress' theretofore dormant Constitutional power to provide a government for Guam, repealed the power of the President to govern and control Guam, which power he possessed by virtue of being the Commander in Chief of the United States Armed Forces and which is discussed at length under II, supra. In the opinion of this Court, it is entirely reasonable to construe § 33 of the Organic Act as simply expressly reserving to the President a small portion of this latter power and as not being addressed to any other Presidential power or authority, statutory or Constitutional, whatsoever. Therefore, since a reasonable construction, other than the one advanced by the defendant, can be applied to the Organic Act of Guam and, more specifically, to § 33 thereof, this Court is bound (1) to avoid an abrogation by implication and (2) hold that the Organic Act of Guam does not repeal Executive Order No. 8683.

■ What is more, this Court is of the further opinion that to interpret the Organic Act of Guam as repealing, by implication, Executive Order No. 8683 would be such a forced and artificial construction of that act as to amount to a judicial encroachment upon Congress' right to deal with the executive order by means of legislation. While it is the function of this Court to interpret legislative enactments, see

Bank of Hamilton v. Dudley's Lessee, 1829, 2 Pet. 492, 524, 7 L.Ed. 496, yet it would be entirely improper to "change the law under the guise of construction." Christner v. Poudre Valley Cooperative Ass'n, 10 Cir., 1956, 235 F.2d 946, 950. The rewriting of a statute for the purpose of bringing about a particular result is certainly not within the judicial function. Story v. Snyder, 1950, 87 U.S.App.D.C. 96, 184 F.2d 454, 459, certiorari denied 1950, 340 U.S. 866, 71 S.Ct. 88, 95 L.Ed. 632.

The defendant's motion to dismiss Count Two of the information herein for failure of that count to "state facts sufficient to constitute an offense against the United States" is denied.

It is so ordered.