**UNITED STATES of America,**
**Plaintiff,**

v.

Jesus D. BORJA, John H. Siguenza, Francisco L. G. Leon Guerrero, Manuel A. Perez, and Antonio G. Camacho, Defendants.

**Crim. No. 1–61.**

District Court of Guam.

Feb. 9, 1961.

# 564

H. G. Homme, Jr., U. S. Atty., Olen W. Burnett, Asst. U. S. Atty., Agana, Guam, for plaintiff.

J. C. Arriola, Arriola, Bohn & Gayle, Agana, Guam, for defendants.

GILMARTIN, District Judge.

This is a criminal proceeding instituted pursuant to the Assimilative Crimes Act of 1948. 18 U.S.C.A. § 13 (1950 ed.). According to the amended information,

> "The United States Attorney charges: That on the 5th day of January, 1961, at the Naval Communication Station, Guam, and waters contiguous thereto, a place within the special maritime and territorial jurisdiction of the United States and within the jurisdiction of this Court, the defendants * * * did use, throw, drop, or explode explosives in the waters of Guam for the purpose of killing or taking fish, all in violation of Section 13 of Title 18, United States Code (Section 12303, Government Code of Guam)."

The Government Code of Guam section referred to in the amended information reads,

> "It shall be unlawful for any person to throw, drop or explode any dynamite or other explosive, or cause to be thrown, dropped or exploded any dynamite in any waters of Guam for the purpose of killing or taking any fish." Guam Gov.Code (1956 Pocket Part), § 12303.

This opinion is addressed to a motion, notice of which was filed by the defendants on January 17, 1961, to dismiss the information herein "on the ground that the information does not state facts sufficient to constitute an offense against the United States." Motion to Dismiss Information.

## I

The Organic Act of Guam, 48 U.S.C.A. § 1421 et seq., provides that,

> "The legislative power of *Guam* * * * shall be vested in a legislature which shall consist of a single house of not to exceed twenty-one members to be elected at large. * * *" 48 U.S.C.A. § 1423 (emphasis added).

It can be said that the Guam Legislature has the authority to legislate with respect to the waters adjacent to the island of Guam *only* if the term "Guam," 48 U.S.C.A. § 1423, includes those waters.

The term "Guam" is defined by the Organic Act:

> "*The territory ceded to the United States in accordance with the provisions of the Treaty of Peace between the United States and Spain,* signed at Paris, December 10, 1898, and proclaimed April 11, 1899, and known as the island of Guam in the Marianas [*sic*] Islands, shall continue to be known as *Guam.*" 48 U.S.C.A. § 1421 (emphasis added).

I stated recently that "the territory ceded to the United States in accordance with the provisions of the Treaty of Peace between the United States and Spain," 48 U.S.C.A. § 1421, "necessarily included *the waters adjoining the territory,* * * * which waters are comprised of 'a marginal belt of the sea extending from the coast line outward a marine league, or three geographic miles.'" United States v. Angcog, D.C.

Guam, 190 F.Supp. 696 (emphasis added). Therefore, since the authority to legislate with respect to "Guam," 48 U.S.C.A. § 1423, is vested in the Guam Legislature, and, further, since the term "Guam," as used in the Organic Act of Guam, includes the waters adjoining the island, it necessarily follows that the Guam Legislature has the power to legislate with respect to the waters adjacent to Guam.

## II

I find additional evidence of Congress' intent that the Guam Legislature should have the power to enact laws regarding Guam's territorial waters in the Fish Restoration and Management Projects Act, as amended. 16 U.S.C.A. § 777 et seq.

The portions of that act which are relevant to the question under consideration read as follows:

"The Secretary of the Interior is authorized to cooperate with * * * the Governor of Guam * * * in the conduct of *fish restoration and management projects, as defined in section 777a of this title,* upon such terms and conditions as he shall deem fair, just, and equitable * *." 16 U.S.C.A. § 777k (emphasis added).

"For the purposes of this chapter the term 'fish restoration and management projects' shall be construed to mean projects designed for the restoration and management of all species of fish which have material value in connection with sport or recreation in the *marine* and/or fresh *waters* of the United States and include—

\*   \*   \*   \*   \*   \*

"(b) the acquisition of such facts as are necessary to guide and direct the *regulation of fishing by law,* including the extent of the fish population, the drain on the fish supply from fishing and/or natural causes, the *necessity of legal regulation of fishing, and the effects of any measures of regulation that are applied* * * *." 16 U.S.C.A. § 777a (emphasis added). ·

I feel that the statutory scheme is quite clear. The Fish Restoration and Management Projects Act, as amended, provides, *inter alia,* for the co-operation of the Secretary of the Interior with the Governor of Guam in the marshalling of such facts as would be of assistance to the Guam Legislature in enacting effective laws regulating sport and recreation fishing in Guam's marine waters. Cf. 16 U.S.C.A. § 777. Such laws, of course, would be legislation respecting the waters adjacent to the island of Guam.

## III

Another part of the Organic Act of Guam provides,

"(a) The title to all property, real and personal, owned by the United States and employed by the naval government of Guam in the administration of the civil affairs of the inhabitants of Guam, including automotive and other equipment, tools and machinery, water and sewerage facilities, bus lines and other utilities, hospitals, schools, and other buildings, shall be transferred to the government of Guam within ninety days after August 1, 1950.

"(b) *All other property,* real and personal, owned by the United States in Guam, *not reserved by the President of the United States within ninety days after August 1, 1950,* is placed under the control of the government of Guam, to be administered for the benefit of the people of Guam, and the legislature shall have authority, subject to such limitations as may be imposed upon its acts by this chapter or subsequent Act of the Congress, to legislate with respect to such property, real and personal, in such manner as it may deem desirable. * * *" 48 U.S.C.A. § 1421f (emphasis added).

It is true that exclusive jurisdiction over the Naval Communication Station, where the alleged crimes are supposed to have been committed by the defend-

ants, was reserved by the President pursuant to 48 U.S.C.A. § 1421f(b):

"* * * [B]y virtue of the authority vested in me by * * * [48 U.S.C.A. § 1421f (1952 ed.)], and as President of the United States, it is ordered as follows:

"1. The following-described real * * * property of the United States in Guam is hereby reserved to the United States and placed under the control and jurisdiction of the Secretary of the Navy: * * *

"(a) All of that real property in Guam situated within the perimeter areas defined in the following-designated condemnation proceedings * * *:

| Condemnation proceedings Civil No. | Perimeter area | Facility |
|---|---|---|
| | *Acres* | |
| * * * | * * * | * * * |
| 10–50 | 4,798.682 | Naval Communication Station. |
| * * * | * * * | * * *" |

Exec. Order No. 10178, 3 C.F.R., 1949–53 Comp., 361–62 (1950), 48 U.S.C.A. § 1421f note.

Nevertheless, the waters immediately adjoining the Naval Communication Station below the low water mark were, in effect, expressly excluded from the Executive Order No. 10178 reservation of jurisdiction:

"* * * thence proceeding along Mean Lower Low Water to Corner No. 1, which is the point of ending, and containing an area of 19,420,000 square meters (4798.768 acres) more or less.

"There is also condemned and acquired by virtue of this proceeding all of such other privately owned lands which have accreted to the above described lands between said lands and the ordinary low water mark of the ocean. * * *"

Amended Complaint in United States v. 19,400,000 Square Meters of Land, Condemnation Proceeding No. 10–50, D.C.Guam.

In the light of the above, the waters immediately adjacent to the Naval Communication Station, and below the low water mark, like the remainder of the Guam territorial waters, must be held to be outside the exclusive jurisdiction of the United States and a proper subject of legislation by the Guam Legislature.

## IV

As I have said above, the Guam Legislature has, generally speaking, the power to legislate with respect to the territorial waters of Guam, including those adjoining the Naval Communication Station. This is a *concurrent* legislative jurisdiction; it is shared with the United States Congress.

"* * * The erection of a local legislature in a territory or a possession and the grant of legislative power do not deprive Congress of the reserved power to legislate for the territory or possession, or abrogate existing congressional legislation in force therein." Asiatic Petroleum Co. v. Insular Collector of Customs, 1936, 297 U.S. 666, 670–671, 56 S.Ct. 651, 653, 80 L.Ed. 967.

In fact, the Organic Act of Guam, itself, says,

"The legislative power of Guam shall extend to all subjects of legislation of local application not inconsistent with the provisions of this chapter and the laws of the United States applicable to Guam * * *."

48 U.S.C.A. § 1423a.

In other words, the Guam Legislature's power to legislate is prescribed and limited by the Organic Act, by other acts of Congress and by the provisions of the United States Constitution. Furthermore, since Presidential executive orders have the force and effect of statutes, United States v. Angcog, supra, D.C. Guam, 1961, 190 F.Supp. 696, an executive order, such as, for example, the one establishing the Guam Island Naval Defensive Sea Area, Exec. Order No. 8683, 3 C.F.R., 1943 Cum.Supp., 894 as amend-

ed Exec. Order No. 8729, 3 C.F.R., 1943 Cum.Supp., 919 and Exec. Order No. 10341, 3 C.F.R., 1949–53 Comp., 864 (1958), U.S.Code Congressional and Administrative News, 1952, p. 1045, would be one of "the laws of the United States applicable to Guam," 48 U.S.C.A. § 1423a (1952 ed.), and for that reason any enactment of the Guam Legislature inconsistent with it would be invalid.

■ It appears to me that the particular enactment of the Guam Legislature under discussion, viz., Government Code of Guam, § 12303, is not inconsistent with the Organic Act of Guam, any other acts of Congress, the United States Constitution or any Presidential executive order. What is more, as the Guam Legislature has the authority to enact laws regarding the waters adjacent to the island of Guam, including those adjacent to the Naval Communication Station which are below the low water mark, I am constrained to hold that Government Code of Guam, § 12303, is a valid enactment with respect to those waters.

## V

■■ The Assimilative Crimes Act of 1948 reads as follows:

"Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment." 18 U.S.C.A. § 13 (1950 ed.).

It applies local laws only to places which are under the *exclusive* jurisdiction of the United States. Cf. Western Union Telegraph Co. v. Chiles, 1909, 214 U.S. 274, 278–79, 29 S.Ct. 613, 53 L.Ed. 994.

Hence, if the alleged criminal conduct of the defendants was performed at the Naval Communication Station, above the low water mark, which is a place within the exclusive jurisdiction of the United States, the Assimilative Crimes Act would apply. On the other hand, if the alleged criminal conduct occurred upon the waters adjoining the Naval Communication Station, but below the low water mark, a place not within the exclusive jurisdiction of the United States, the Assimilative Crimes Act would not apply; no federal crime would have been committed.

I find it impossible to ascertain from the allegations contained in the amended information on file herein whether the defendants "did use, throw, drop, or explode explosives * * * for the purpose of killing or taking fish" *above* or *below* the low water mark of the waters adjacent to the Naval Communication Station. Nevertheless, I am unwilling, at this time, to decide whether the information fails to "state facts sufficient to constitute an offense against the United States." Motion to Dismiss Information. At the same time, I am of the opinion that the information is not a "definite written statement of the *essential* facts constituting the offense charged," F.R.Cr. P. 7(c) 18 U.S.C.A. (emphasis, added), and that, therefore, it must be dismissed. "[N]ecessary allegations cannot be left to inference * * *." Williams v. United States, 9 Cir., 1959, 265 F.2d 214, 218. The United States will be permitted to amend, however. See F.R.Cr.P. 7(e).

## Order

Defendants' motion to dismiss the information herein, notice of which was filed on January 17, 1961, is granted, and the information and amended information herein are dismissed, provided, however, that the United States is given 10 days after the notice of this opinion and order to file an amended information.

It is so ordered.