WILSON MILLING COMPANY, A DISSOLVED CORPORATION, BY A. J. LANDRUM, R. E. LEE WILSON, JR., J. H. CRAIN, S. A. REGENOLD, AND W. F. WILSON, TRUSTEES IN LIQUIDATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 107356. Promulgated January 5, 1943.

*George E. H. Goodner, Esq.*, and *Paul E. Schaub, C. P. A.*, for the petitioner.
*George H. Mitchell, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* Petitioner attacks the proposed deficiency upon three grounds. It argues, first, that Title III of the Revenue Act of 1936, the pertinent provisions of which are set forth in the margin,[1] imposes an unjust enrichment tax upon net income from reimbursements only if such reimbursements constitute net income to the taxpayer under Title I of the revenue act. Based upon this premise, petitioner seeks to escape liability for unjust enrichment tax upon the ground that the reimbursements it received did not constitute net income for income tax purposes, because (a) they represented a partial recovery of cost, the deduction of which in 1935 did not result in any tax benefit, applying the tax benefit doctrine recently approved by Congress, section 116, Revenue Act of 1942; and (b) in any event the reimbursements were not taxable under Title I because they represented merely a reduction in the purchase price of articles.

The premise upon which this argument rests is unsound. Congress has left no doubt as to the meaning of the phrase "net income from reimbursements." Section 501 (d) provides that the "net income from reimbursements" shall be computed by deducting from the reimbursements received by the taxpayer the expenses and fees reasonably incurred to obtain them. Art. 8, Regulations 95. There is no contention here that any expenses or fees were incurred to

---

[1] SEC. 501. TAX ON NET INCOME FROM CERTAIN SOURCES.

(a) The following taxes shall be levied, collected, and paid for each taxable year (in addition to any other tax on net income), upon the net income of every person which arises from the sources specified below:

 \* \* \* \* \* \*

(2) A tax equal to 80 per centum of the net income from reimbursement received by such person from his vendors of amounts representing Federal excise-tax burdens included in prices paid by such person to such vendors, to the extent that such net income does not exceed the amount of such Federal excise tax burden which such person in turn shifted to his vendees.

 \* \* \* \* \* \* \*

(d) The net income from reimbursement or refunds specified in subsection (a) (2) or (3) shall be computed as follows: From the total payment or accrual (1) of reimbursement to the taxpayer from vendors for amounts representing Federal excise tax burdens included in prices paid by the taxpayer to such vendors or (2) of refunds or credits to the taxpayer of Federal excise taxes erroneously or illegally collected, there shall be deducted the expenses and fees reasonably incurred in obtaining such reimbursement or refunds.

 \* \* \* \* \* \* \*

(1) The taxes imposed by subsection (a) shall be imposed on the net income from the sources specified therein, regardless of any loss arising from the other transactions of the taxpayer, and regardless of whether the taxpayer had a taxable net income (under the income-tax provisions of the applicable Revenue Act) for the taxable year as a whole; except that if such application of the tax imposed by subsection (a) is held invalid, the tax under subsection (a) shall apply to that portion of the taxpayer's entire net income for the taxable year which is attributable to the net income from the sources specified in such subsection.

obtain the reimbursements. Section 501 (a) provides that the taxes imposed by subsection (1) shall be imposed on the net income from sources specified therein, regardless of any loss arising from other transactions and regardless of whether the taxpayer had a taxable net income for the taxable year as a whole. Subsection (a) (2) affords a limitation by providing that the net income from reimbursements subject to unjust enrichment tax shall not exceed the amount of the excise tax burden shifted by the taxpayer to its vendees.

Petitioner's argument flies in the face of these explicit provisions. The Congressional intent, to tax reimbursements regardless of taxable net income, is clear and unmistakable. While there is some reference in subsections 501 (a) (1) and (c) to net income under Title I, those subsections deal with persons upon whom an excise tax was imposed. Neither such provisions nor cases decided thereunder have application to the present case, for the processing tax involved here was not imposed upon petitioner and the reimbursements received by it are governed by subsections 501 (a) (2) and (d).

The contention that an amount may be taxed as unjust enrichment only if it represents an item properly includible in taxable income for ordinary income tax purposes was advanced and rejected in *Sportwear Hosiery Mills*, 44 B. T. A. 1026, 1033; affd., 129 Fed. (2d) 376, where we said:

The second contention is that the refunds made by petitioner's vendors constitute "reductions in the purchase price of goods." Petitioner then submits that a reduction in the purchase price of an article does not constitute the realization of "income."

It is true that the refunds were made for the purpose of reimbursing the petitioner for a part of the price which was paid by the petitioner for the yarn. But the petitioner manufactured the yarn into hosiery and sold that hosiery to its customers, including in the sales price the burden of the processing taxes which it had paid to its vendors. The very purpose of the enactment of the unjust enrichment tax was to subject to tax gains of this character. In our opinion there is no merit in this contention.

We have examined the cases cited by petitioner, but none of them supports its contention that an amount may not be subject to the unjust enrichment tax because, due to the tax benefit theory, it is not subject to the normal income tax.

Petitioner's second contention, that it did not pay a processing tax in 1935 and therefore did not shift the tax to its vendees, is equally devoid of merit. While petitioner did not pay a processing tax as such, the evidence is clear, and petitioner admits, that the burden of the processing tax was included in the prices paid to its vendors. Section 501 (a) (2) levies a tax upon reimbursements "representing Federal excise-tax burdens included in prices paid by such person to

such vendors * * *." The Third Circuit has rejected the contention that this language applies only where the processing tax is identified as a separate item. *Sportwear Hosiery Mills* v. *Commissioner, supra.* It is manifest that petitioner received the reimbursements in question by reason of the burden of the processing tax included in the prices it paid. If any doubt existed as to the meaning of the statute it is dissipated by the following language appearing in House Report 2475, 74th Cong., 2d Sess., p. 11:

Where the taxpayer is a person who bought articles *at a price including the burden of the excise* and resold them at a price also including the burden of the excise, there shall be computed the net income attributable to any reimbursement he receives from his vendor for the burden of the excise, and this amount (limited by the extent to which he shifted the burden of the excise to his customers) is subject to the tax. [Emphasis supplied.]

Nor is there evidence in the record from which we could find that petitioner did not shift the burden of the processing tax to its vendees. The only circumstance relied upon by petitioner in this connection is the fact that it operated at a loss at all times. This, however, proves nothing with respect to shifting the tax burden. The loss may well have been that much greater had petitioner not passed on the tax to its customers. Petitioner's president testified that the cost price used in determining its sales price was the price paid to its vendors, which, of course, included the processing tax. It is apparent that the selling prices were set with a view to recouping the tax burden that had been added to petitioner's cost. "The fact of continued net losses cannot operate to impair the effect of the evidence that the prices at which the goods were sold were set with a view to recover the tax paid." *Vennell* v. *United States*, 36 Fed. Supp. 646; affd. per curiam, 122 Fed. (2d) 936. As we said in *Greenwood Packing Plant*, 46 B. T. A. 632, 637, 638 (affd., 131 Fed. (2d) 787):

Petitioner * * * made no effort to show that it did not pass the processing tax on hogs to its customers except to show that during the year it operated its business at a small loss. This sort of evidence is not sufficient to prove that it did not pass the processing tax on to its customers. * * *

Even if we were to assume that the existence of a loss meant that petitioner had absorbed a part of the processing tax burden, the present record is barren of facts upon which any apportionment of the loss could be made between such burden and petitioner's other costs.

Petitioner's final attack is upon the validity of the statute as applied to the present facts. Petitioner's counsel states that "The discussion here is directed to the point that the law would be invalid if it were construed to mean that part of a taxpayer's gross receipts may be singled out and taxed as 'income' when there is a net loss."

The constitutionality of the unjust enrichment tax has been upheld under many varying circumstances. *Tennessee Consolidated Coal Co.*, 46 B. T. A. 1035; *Greenwood Packing Plant, supra; Sportwear Hosiery Mills, supra; White Packing Co.* v. *Robertson*, 89 Fed. (2d) 775; *Kingan & Co.* v. *Smith*, 17 Fed. Supp. 217. Petitioner's brief, however, asserts that "so far as petitioner knows, the constitutionality of taxing a special kind of 'income' when there is no *net income* has not been passed on by the Board or the Courts." We held, however, in *Greenwood Packing Plant, supra*, that the taxpayer was liable for a tax on unjust enrichment for the year 1935 even though the facts showed that it sustained a net loss during that year. The petition in that case assigned as error the "determination of a tax on income, when no free net income exists with which to pay it, contrary to the 5th and 16th amendments of the United States Constitution." No argument was made on brief in support of the constitutional issue thus raised. We held that the assignment of error was without merit.

Similarly, the power of Congress to levy a tax upon this special type of income was upheld in *Kingan & Co.* v. *Smith, supra*, where the court stated that the collection by the taxpayer of a processing tax from vendees and its subsequent refusal to pay the tax over to the Government gave rise to income "from an entirely different source from that derived from the conduct of its ordinary business, * * * in excess of the usual amount received * * * when the same volume is considered, and, *as such*, Congress had the power to place in a separate class all persons having such an income, and to enact legislation imposing a tax thereon." The act is spoken of as "an attempt to tax an income received by a processor separate and apart from the regular income which he would receive in the normal conduct of his business. If he has no such income, then * * * he is not required to pay. If he has such an income, then Congress has the power to levy a tax thereon."

We think it is immaterial that petitioner had a net loss under Title I. It had net income or profit from reimbursements in that it received an amount representing taxes paid which it in turn had shifted to others. In *Union Packing Co.* v. *Rogan*, 17 Fed. Supp. 934, 940, the court said:

And if the Congress believes that a profit from a particular source, in the production of which the community has participated, was obtained under such circumstances as to amount to "unjust enrichment" by the standards of social or business conduct, as it conceives them, and taxes it heavily, courts have no right to say "Nay".

The power of Congress to levy a special income tax upon profit from particular transactions was upheld by the Supreme Court in *United States* v. *Hudson*, 299 U. S. 498. While it did not appear in that case

that the taxpayer had no net income under the general income tax statutes, we gather from the Court's opinion that such fact would be unimportant in determining the extent of the power of Congress to enact income tax legislation.

We conclude that there is no merit in petitioner's contention and that respondent's determination must be affirmed.

*Decision will be entered for respondent.*

