VICA COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 425 P. T. Promulgated July 31, 1945.

*Walter M. Gleason, Esq.*, for the petitioner.
*Lloyd Hooks, Esq.*, for the respondent.

## OPINION.

MURDOCK, *Judge*: This proceeding is based upon a disallowance by the Commissioner of the petitioner's claim for refund of processing taxes paid by it on the processing of hogs. The Commissioner moved on August 24, 1944, to dismiss the proceeding, first, on the ground that the claim for refund is legally insufficient to confer jurisdiction upon the Court to review on the merits the disallowance of the petitioner's claim, since the claim was not prepared in accordance with the applicable statutes, the regulations duly promulgated by the Commissioner, and the printed instructions on the official form. The second ground is that a hearing on the merits would be a useless procedure because the Commissioner could not have determined legally from the facts stated in the claim for refund that the petitioner had borne the burden of any part of the amount paid as processing tax, and the petitioner in any hearing on the merits before the Tax Court would be limited to the grounds stated in its claim for refund and the facts stated therein in support of those grounds. The parties were heard on this motion and they have also filed briefs.

The claim relied upon by this petitioner was filed on June 30, 1937, with the collector of internal revenue for the first district of California. A proper claim must contain not only a statement of the ground on which the refund is claimed, but also a statement of a factual situation which, if proven, will entitle the claimant to a refund. All statements of facts in support of the grounds for relief relied upon by the claimant must be set forth in the claim under oath. An essential part of a proper claim for refund is an adequate statement of the contention of the taxpayer in regard to the extent to which it bore the burden of the tax, together with a statement of the facts upon which it relies in support of that contention. The Commissioner contends that the claim involved in this proceeding is inadequate with respect to a statement of facts supporting the contention of the petitioner that it bore, to any extent, the burden of the processing taxes paid by it on the processing of hogs.

A claim that the taxpayer bore the burden of the tax might be supported in one or more of several ways. Section 907 (a) of the Revenue Act of 1936 provides that "it shall be prima facie evidence that the burden of such amount was borne by the claimant to the extent (not to exceed the amount of the tax) that the average margin per unit of the commodity processed was lower during the tax period than the average margin was during the period before and after the tax." The same subsection further provides that "If the average margin during

the tax period was not lower, it shall be prima facie evidence that none of the burden of such amount was borne by the claimant but that it was shifted to others." The same section further provides in sub-paragraph (e) that either the claimant or the Commissioner may rebut the presumption resulting from the comparison of margins "by proof of the actual extent to which the claimant shifted to others the burden of the processing tax." Subsection (e) also specifies what such proof may include without limiting the claimant to the proof mentioned.

A claimant is supposed to set forth in schedule D-1 (a) of its claim facts showing the average margin for the tax period. The petitioner set forth therein a statement by months of the processing tax which accrued during each month and a statement by months of the total number of units of the commodity processed during the month. In column (2), entitled "Gross sales value of all articles processed from the commodity," it inserted only the words "no available." Column (3), entitled "Costs of the commodity processed during month," was left blank, as were column (5), entitled "Total of columns 3 and 4," and column (6), entitled "Margin (Amount in column 2 less amount in column 5)." There was a place at the bottom of this sheet where the claimant was supposed to show the average margin for the tax period per unit of the commodity. This was also left blank. Schedule D-1 (b), entitled "Average margin for the period before and after the tax," was left entirely blank except for the insertion of the words "not available." Schedule D-1 (c), entitled "Calculation of amount as indicated by the evidence as to margins," was left entirely blank. Just below (c) the following is printed on the form: "(Claimant must complete either A or B below and strike out the one not applicable.)" "A" is a statement that the amount shown as the tax burden borne by the claimant and not shifted, as indicated by marginal evidence, is correct, and the form instructs the claimant, if it agrees that the figure is correct, to set forth in support thereof in schedule D-2 any additional facts and evidence it may have. "B" is a statement that the amount shown as the tax burden borne by the claimant and not shifted, as indicated by the marginal evidence, is incorrect, together with a statement of the correct amount "for the reasons and upon the evidence set out and made a part of schedule D-2." The petitioner did not complete either "A" or "B" and did not strike out either one as not applicable. Nevertheless, it did make certain statements under D-2, which will be discussed later.

The failure of the petitioner to set forth sufficient facts from which the amount of tax burden borne by it and not shifted, as indicated by marginal evidence, could be computed deprives both the petitioner and the Commissioner of any benefit which they might have derived from a presumption arising from marginal data. Furthermore, since the

petitioner has failed to set forth the marginal data for the tax period called for in schedule D-1 (a), both parties are likewise deprived of any benefit which might flow to them by use, for comparative purposes, of data for the period before and after the tax, obtained by reference to representative concerns engaged in a similar business and similarly circumstanced, as provided in section 907 (c). *Lee Wilson & Co.* v. *Commissioner*, 123 Fed. (2d) 232. Thus, the petitioner can obtain no benefit from any presumption in regard to margins as provided in section 907.

Congress intended that marginal data should be furnished as a part of the claim. A question arises under the statute as to whether a claimant such as this one, which has made a wholly inadequate statement in regard to margins, can properly include in its claim other contentions and supporting facts to show that it has not shifted the burden of the tax to others. However, for the purpose of this opinion, we will assume, without deciding, that it can make such other claims and statements. Cf. *Sophie Jaski, Trading as White House Bakery*, 43 B. T. A. 321.

The next question is, Upon what grounds and upon what supporting factual statements contained in the claim does the petitioner rely to show that it did not shift the burden of this tax to others? It concedes in schedule E of the claim that it has not refunded to its vendees any of the processing taxes. The only other matter contained in the claim bearing upon the question is contained in four exhibits listed under schedule "D-2, Other evidence. (Claimant shall list below each document, exhibit, statement of facts, and other evidence submitted with and made a part of this schedule in support of the showing as to margins, or in rebuttal thereof and tending to establish that he bore the burden of the tax. See also pars. 7 (a) and 7 (c) of instructions.)" Exhibit A is entitled "Statement of Facts." It is as follows:

### STATEMENT OF FACTS

Vica Company, a corporation which was organized and existed under the laws of the State of California, carried on a meat packing business as a principal until May of 1935 when the packing plant and packing business was sold to Armour & Company.

The books and records of the company remained with Armour & Company after the sale, at the plant in South San Francisco. Subsequently however, by direction of one of Armour's men, the books and records were taken out of the office and a fire was started. Officials of this company found out about it and immediately stopped it but certain important records had already been destroyed.

The attached claim has been prepared to the best of our ability on the basis of the information and records available at this time. It is believed that certain data and records personally maintained by the former manager of the company will be availably [sic] shortly and it is requested that your office give consideration to the data now being submitted, and to such information and supporting data which may be available at time audit is made.

It contended that the Processing Tax was not passed on by this company and in support of such contention the following facts are recited:

(1) The tax, while accrued on the books of the company was not paid except for several comparatively small amounts and the company did not include the amount of the tax in fixing its prices. Counsel for the company believed the tax was unconstitutional and so advised.

(2) Competition was [sic] a certain large firm operating in this district was such that the amount of the tax could not be added to the already high cost of pork products.

(4) [sic] In further support of its contentions, there is submitted herewith as Exhibit "B" a list of the losses sustained by the company during the period when the Processing Tax was in effect.

(4) Based on the available records, without segregation as to pork and other products, the attached Exhibits "C" and "D" will show that there was a decrease in the gross profits of the company during the period when the Processing Tax was in effect. As there was a marked improvement during this period in the sales of beef and lamb, a statement showing sales and cost of sales of pork products only would undoubtedly show that the full amount of the tax was absorbed by the company.

It is further requested that consideration be given, in connection with this claim, to data based on sales and cost of sales of other concerns in the same line of business.

A statement was made in the claim showing when the tax was belatedly paid, but failure to pay the tax as it accrued, based upon a belief that the tax was unconstitutional, would not show whether or not the petitioner had sustained the burden of the tax. The statement that competition with an unnamed large firm operating in the district was such that the amount of the tax could not be added to the already high cost of pork products is a mere assertion or conclusion and no facts are stated to show whether or not such an assertion or conclusion was true. General assertions and conclusions are not sufficient. *Landrum* v. *Commissioner*, 122 Fed. (2d) 857; *18th Street Leader Stores, Inc.* v. *United States*, 142 Fed. (2d) 113; *Lee Wilson & Co.* v. *Commissioner, supra; Tennesssee Consolidated Coal Co.* v. *Commissioner*, 117 Fed. (2d) 452; *Samara* v. *United States*, 129 Fed. (2d) 594. The price set by competitors may have included the tax. The fact that the entire business of the petitioner resulted in losses during the period when the processing tax was in effect does not show whether the petitioner bore the burden of the processing tax on pork products or whether it did not. *Wilson Milling Co.*, 1 T. C. 389; 138 Fed. (2d) 249; certiorari denied, 320 U. S. 800. This is particularly true in view of the fact that the petitioner's business consisted not only of the processing of pork, but also included the processing of beef and lamb, which latter items were not subject to any processing tax. Even if the petitioner had set forth facts showing that it had sustained losses during this period upon its pork processing business alone, nevertheless, such facts would not in and of themselves show whether or not the petitioner had borne the burden of the processing tax on those

products. *Wilson Milling Co.*, *supra*, p. 393. The Tax Court there pointed out that the loss might have been greater had the processor not passed on the tax to others. See also *Byars* v. *Commissioner*, 138 Fed. (2d) 513, 514.

Exhibits C and D purport to show that there was a decrease in the gross profits of the company (without segregation as to pork and other products) during the period when the processing tax was in effect. The petitioner then makes the assertion or states the conclusion that during this period there was a marked improvement in the sales of beef and lamb. But it does not state any facts in support thereof, and it also draws the ultimate conclusion, which is certainly nothing but a conclusion, that a statement showing separately sales and costs of sales of pork products would undoubtedly show that the full amount of the tax was absorbed by the company. Obviously, there is not in any of these statements separately, or in all of them taken together, a statement of facts which, if proven, would show whether or not the petitioner sustained the burden of the tax or passed it on entirely, or to some extent, to others. Some of the factual statements contained in this claim might carry some evidentiary weight, but all of them taken together would fall far short of establishing that the petitioner is entitled to any refund. We have now discussed all of the matter stated in the claim with reference to the question of whether or not the petitioner bore the burden of the tax or passed it on to others.

The claim for refund involved herein was filed on June 30, 1937. It was made under oath. The petitioner never attempted to amend that claim. However, it did subsequently, on October 12, 1938, forward to the Commissioner a document entitled "Rider attached to P. T. Form 79." This document does not purport to be, and apparently was not intended to be, an amendment to the claim for refund. It is not sworn to and, of course, the oath to the claim for refund filed June 30, 1937, could not cover a document subsequently submitted. Counsel for the petitioner in its brief states: "We concede that, as stated by respondent's counsel, this 'rider' is largely argumentative, and, in effect, a lawyer's brief." Since the "rider" is not a part of the claim, any facts stated therein would not be facts stated in the claim, and, since the present inquiry relates only to facts stated in the claim (cf. *Samara* v. *United States*, *supra*), the "rider" can properly be ignored. It contains some assertions and conclusions, but not sufficient supporting statements of fact which, if proven and considered in connection with other facts stated in the claim, would form the basis for a conclusion that the petitioner bore the entire burden of the tax and did not shift any part thereof to others. Such assertions and conclusions are not, for present purposes, a substitute for a statement of the facts themselves.

The petitioner would not be permitted to prove in a hearing before this Court any facts not set forth in its claim (*Angelus Milling Co.*, 1 T. C. 1031; affd., 144 Fed. (2d) 469; 325 U. S. 293; *Tennessee Consolidated Coal Co.* v. *Commissioner, supra;* cf. *Blum Folding Paper Box Co.*, 4 T. C. 795), and, on the basis of the facts set forth in the claim, this Court would not have authority to grant any relief, even though the petitioner were permitted to go to trial and were successful in proving all of these facts. We conclude, therefore, that the second point in the respondent's motion is well taken and that the proceeding should be dismissed at this time, since further proceedings would be a waste of time and would avail the petitioner nothing.

The petitioner in argument contends that the respondent waived any defects in this claim and passed upon its merits. Both parties introduced several affidavits on this point. The record clearly indicates that there was no waiver. The circumstances here are not unlike those in *Angelus Milling Co., supra,* where a similar claim was made and rejected. The Commissioner was at all times urging the petitioner to amend its claim to include complete marginal data, or at least such marginal data as were available, and it was also urging the petitioner to amend its claim to include a statement of any other facts upon which it relied. The petitioner, however, never amended its claim and says that its failure to do so was due to the unavailability of evidence of other supporting facts. If that is so, it doesn't help the petitioner's case. The loss or destruction of all records would not lessen the claimant's burden. *Katz Underwear Co.* v. *United States,* 39 Fed. Supp. 976, 977; affd., 127 Fed. (2d) 965; certiorari denied, 317 U. S. 655; *McClung Co.* v. *United States,* 35 Fed. Supp. 464; cf. *Burnet* v. *Houston,* 283 U. S. 223, 228. Its failure to keep records to show that it bore the burden of the tax would certainly not help it. *Wilson & Co.* v. *Commissioner,* 111 Fed. (2d) 313, 318. The fact that the Commissioner was patient with the petitioner and had various conferences in an effort to obtain additional information does not show that the Commissioner waived the defects in this claim. The notice of disallowance clearly shows that the claim was denied because of its insufficiency and that the Commissioner did not consider and reject the claim on its merits.

The petitioner, in its oral argument and on brief, has used the words "inherent impossibility," apparently in support of an argument that the statute relating to refunds of processing taxes is unconstitutional. It does not appear either from statements in the claim itself or from anything else that the petitioner has said that there is any inherent impossibility of proving the petitioner's case. Other hog processors have been able to prove their right to a refund of processing taxes.

This petitioner has stated in its claim that it has lost some of its records, but it has not stated what records were lost and what ones were not. We need not decide whether the petitioner should be excused for the loss of any of its records. Apparently, it has records which enabled it to make the statements contained in its claim as to the accrual and payment of the tax, as to the number of units processed, as to losses sustained from its business as a whole, and as to its gross profits. It has not stated facts to show that it would not be able to prove in any way that it sustained the burden of this tax. Consequently, we do not pass upon the question of unconstitutionality based upon the alleged "inherent impossibility" of proof. Cf. *Tennessee Consolidated Coal Co.* v. *Commissioner, supra.* Furthermore, the statute has been held to be constitutional. *Anniston Manufacturing Co.* v. *Davis,* 301 U. S. 337. Parts of the petitioner's argument in this connection might be taken as an admission on its part that the facts stated in its claim are an insufficient basis for a refund.[1] However, the present decision will not be based on any admission of the petitioner.

Counsel for the petitioner in this case has failed to meet and answer the arguments of the respondent and the suggestions of the Court calling attention to various decisions holding that the claim for refund must contain a statement of the facts relied upon by the petitioner to support its claim; evidence to prove material facts not set forth in the claim may not be introduced at the trial; and, consequently, where the claim is clearly inadequate in its statement of facts, the proceeding may be dismissed without hearing, since a hearing would serve no useful purpose. Counsel for the petitioner has argued extensively in regard to the difficulties to which it has been subjected as a result of the processing tax and the inequity of denying it a hearing. This Court has no jurisdiction beyond that granted by the applicable statutes and is not free to go beyond its statutory authority to apply rules of equity. *Tennessee Consolidated Coal Co.* v. *Commissioner, supra.* Furthermore, no inequity is done by refusing to allow the petitioner to go to trial, with the additional expense incident thereto, if the Court is right in believing that such a trial could not possibly result in any benefit to the petitioner.

*An order will be entered dismissing the proceeding.*

---

[1] For example, the petitioner states on page 9 of the rider: "The incidence of the tax may have been shifted on some cuts and absorbed on others, but the actual facts the claimant has no way of knowing."